**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ILLINOIS UNION INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-6604** |
| **LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY** | **SECTION: "G"(2)** |

**ORDER**

Pending before the Court are Defendant Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana's ("Blue Cross") "Motion for Summary Judgment on Bad Faith"[1] and Plaintiff Illinois Union Insurance Company's ("Illinois Union") "Motion for Summary Judgment on Bad Faith."[2] Having reviewed the motions, the memoranda in support and in opposition to each motion, the record, and the applicable law, the Court will deny both motions.

**I. Background**

*A.* *Factual Background*

**1.** **The Policy at Issue**

On May 19, 2016, Illinois Union filed a complaint for declaratory judgment against Blue Cross.[3] This matter involves the rights and obligations of Illinois Union under a Managed Care Organization Errors and Omissions Liability Policy ("the Policy") that it issued to Blue Cross for

---

[1] Rec. Doc. 115.

[2] Rec. Doc. 117.

[3] Rec. Doc. 1.

1

the policy period of May 25, 2007, to January 1, 2009.[4] In relevant part, the Policy states that Illinois Union "shall pay on behalf of any insured any Loss which [Blue Cross] is legally obligated to pay as a result of any Claim that is first made against the Insured during the Policy Period . . . ."[5] Loss is defined to include "Defense Expenses and any monetary amount that an Insured is legally obligated to pay as a result of a Claim . . . ."[6] The Policy states that loss does not include, *inter alia*: "fees, amounts, benefits, obligations or coverages owed under any contract with any party . . ., health care plan or trust, insurance or workers compensation policy or plan or program of self insurance;" "non-monetary or equitable relief or redress in any form;" and "matters which are uninsurable" under Louisiana law.[7] Additionally, the Policy contains a consent to settle clause requiring the insured to obtain the insurer's written consent before settling a claim, as well as a cooperation clause requiring the insured to provide the insurer with "all information, assistance cooperation that the Insurer reasonably requests."[8]

## 2. The Underlying Action

In this action, Illinois Union seeks a declaration as to the extent of its obligation to Blue Cross with respect to a settlement reached by Blue Cross with Omega Hospital, LLC ("Omega") in a separate lawsuit filed by Omega against Blue Cross in state court ("the Omega Lawsuit" or "the underlying action").[9] In the Omega Lawsuit, Omega alleged that Blue Cross engaged in

---

[4] *Id.* at 3.

[5] Rec. Doc. 118-5 at 8.

[6] *Id.* at 9.

[7] *Id.* at 10. The parties do not dispute that Louisiana law applies to the instant dispute.

[8] *Id.* at 16.

[9] Rec. Doc. 1 at 1.

"systematic, sophisticated, and intentional conduct to avoid paying Omega" for services rendered to patients who were owed benefits, obligations, or coverage under Blue Cross health care plans.[10] Specifically, Omega alleged five causes of action: (1) violation of Louisiana's Unfair Trade Practices Act ("LUTPA"); (2) fraud; (3) negligent misrepresentation; (4) detrimental reliance; and (5) unjust enrichment.[11]

Illinois Union alleges that Blue Cross settled the underlying action without Illinois Union's consent in violation of the Policy's requirement that Blue Cross obtain Illinois Union's written consent to settle in order to obtain coverage.[12] Illinois Union further alleges that even if Blue Cross's unilateral settlement did not violate the Policy's written consent requirement, coverage is precluded under the Policy because contractual damages of this kind do not constitute covered "loss" under the Policy.[13]

## B. *Procedural Background*

On May 19, 2016, Illinois Union filed a complaint for declaratory judgment against Blue Cross.[14] On July 7, 2016, Blue Cross filed a counterclaim against Illinois Union for a declaration that Illinois Union must indemnify Blue Cross for costs incurred to defend and settle the Omega Lawsuit.[15] Blue Cross also brings counterclaims for breach of contract and statutory bad faith pursuant to Louisiana Revised Statute § 22:1973.[16]

---

[10] *Id.* at 2.

[11] Rec. Doc. 1-2 at 8–11.

[12] *Id.* at 9.

[13] *Id.* at 10.

[14] Rec. Doc. 1.

[15] Rec. Doc. 11.

[16] *Id.*

On April 11, 2017, Blue Cross filed its currently pending motion for summary judgment on bad faith.[17] On April 18, 2017, Illinois Union filed an opposition to the motion.[18]

On April 11, 2017, Illinois Union filed its currently pending motion for summary judgment on bad faith.[19] On April 18, 2017, Blue Cross filed an opposition to the motion.[20] With leave of Court, Illinois Union filed a reply in further support of the motion for summary judgment on April 28, 2017.[21]

## II. Parties' Arguments

### A.   *Blue Cross's Motion for Summary Judgment on Bad Faith*

Blue Cross moves for summary judgment in its favor with respect to Count III of its counterclaims seeking damages resulting from Illinois Union's bad faith handling of Blue Cross's claim and bad faith denial of coverage of the settlement in the underlying action pursuant to Louisiana Revised Statute § 22:1973.[22]

### 1.   Blue Cross's Arguments in Support of the Motion for Summary Judgment

First, Blue Cross argues that Illinois Union failed to indemnify Blue Cross for damages resulting from covered claims.[23] According to Blue Cross, it was a "foregone conclusion" that Illinois Union would deny coverage for the settlement of the underlying action.[24] Blue Cross

---

[17] Rec. Doc. 115.

[18] Rec. Doc. 141.

[19] Rec. Doc. 117.

[20] Rec. Doc. 148.

[21] Rec. Doc. 174.

[22] Rec. Doc. 115-1 at 17.

[23] *Id.* at 11.

[24] *Id.*

represents that Illinois Union's claims handler admitted in her testimony that she did not consider whether the damages in the underlying action represented something other than benefits owed under a health insurance plan.[25] Blue Cross also asserts that the the head of Illinois Union's medical risk claims department, Anthony Pizzonia ("Pizzonia"), admitted that: damages awarded under LUTPA do not constitute benefits owed under a contract; damages sought under fraud or detrimental reliance were separate from benefits owed under a contract; and negligent misrepresentation may be a covered cause of action.[26] According to Blue Cross, Illinois Union failed to conduct "even the most rudimentary coverage analysis," and the admissions of Illinois Union's employees are sufficient to establish bad faith claims handling as a matter of law.[27]

Next, Blue Cross argues that Illinois Union withheld its written consent to the settlement in the underlying action in bad faith.[28] According to Blue Cross, Illinois Union's refusal to grant consent where Blue Cross faced significant risks in the underlying action was unreasonable and left Blue Cross free to settle the case.[29]

Next, Blue Cross contends that despite Illinois Union's decision at the outset of the underlying action to deny coverage, Illinois Union nevertheless continued in bad faith to demand Blue Cross's cooperation.[30] Blue Cross asserts that Illinois Union's decision not to set an indemnity reserve at any time since being notified of Blue Cross's claim, as well as Illinois Union's

---

[25] *Id.* (citing Rec. Doc. 115-9 at 2).

[26] *Id.*

[27] *Id.* at 12.

[28] *Id.*

[29] *Id.* at 13.

[30] *Id.*

claims handler's statements, indicate that Illinois Union always intended to deny coverage.[31] However, Blue Cross argues that Illinois Union continued to press Blue Cross for cooperation.[32] According to Blue Cross, Illinois Union's failure to unequivocally convey its denial of coverage constitutes a misrepresentation of pertinent facts, which is expressly prohibited by Louisiana Revised Statute § 22:1973.[33] Moreover, Blue Cross contends, Illinois Union's failure to inform Blue Cross of its intention to deny coverage and to allow Blue Cross to settle the underlying action constitutes a failure by Illinois Union to treat Blue Cross's interests with the same consideration as its own, as required by Louisiana law.[34] According to Blue Cross, even if Illinois Union believed that some portion of the underlying claims were excluded from coverage, this did not entitle Illinois Union to assert a blanket denial of coverage.[35]

Next, Blue Cross argues that Illinois Union's requests for privileged defense and liability analyses related to the underlying action, as well as Illinois Union's admission that it intended to supply its coverage counsel with privileged communications regarding the underlying action, constitute evidence of bad faith conduct.[36] Blue Cross further contends that Illinois Union failed, in bad faith, to split its claims file between liability and coverage issues.[37]

Next, Blue Cross argues that Illinois Union failed to fulfill its affirmative duty under Section 22:1973 to adjust claims fairly and promptly and to perform a diligent, independent

---

[31] *Id.* (citing Rec. Doc. 115-9 at 2).

[32] *Id.* at 14.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 15.

[36] *Id.* (citing Rec. Doc. 116-9 at 2).

[37] *Id.*

investigation of the claims in the underlying action.[38] Blue Cross asserts that Illinois Union's employees acknowledged that they failed to independently review and evaluate each of the individual claims asserted against Blue Cross in the underlying action.[39] According to Blue Cross, Illinois Union repeatedly claimed that it needed additional information despite the fact that its claims representative never engaged in any independent investigation of the underlying action.[40] Blue Cross asserts that Pizzonia testified that he never attempted to access the state court's docket to obtain relevant documents from the underlying action and that he acknowledged receipt of the summary judgment motions in the underlying action but never read them.[41] Accordingly, Blue Cross contends that it is entitled to summary judgment on its counterclaim for bad faith under Section 22:1973.

### 2. Illinois Union's Opposition to Blue Cross's Motion for Summary Judgment

In opposition, Illinois Union argues that disputes exist as to: (1) whether Illinois Union denied coverage; and (2) whether Illinois Union always intended to deny coverage for the claims asserted against Blue Cross in the underlying action.[42] Illinois Union contends that while Illinois Union issued reservation of rights letters to Blue Cross advising that Illinois Union was reserving its right to deny coverage, it never advised Blue Cross that coverage was denied.[43] According to Illinois Union, a reservation of rights letter does not constitute a denial of coverage.[44]

---

[38] *Id.* at 16.

[39] *Id.* (citing Rec. Doc. 116-9 at 2).

[40] *Id.* at 17.

[41] *Id.* (citing Rec. Doc. 115-9 at 2).

[42] Rec. Doc. 141 at 2.

[43] *Id.*

[44] *Id.* (citing *Mosadegh v. State Farm Fire and Cas. Co.*, 330 F. App'x 65 (5th Cir. 2009)).

As to witness testimony, Illinois Union asserts that Pizzonia actually testified that Illinois Union did not deny coverage but reserved its rights and continued to investigate.[45] Illinois Union points to the testimony of Pizzonia, in which Illinois Union represents that he stated that Illinois Union was never looking to deny coverage.[46] Likewise, Illinois Union argues that the claims handler in this case stated that she asked Blue Cross for an assessment of damages in an attempt to find coverage if there was any.[47]

Illinois Union next argues that the opinions of Blue Cross's expert on bad faith are conclusory and not based in fact.[48] As an example, Illinois Union contends that bad faith cannot be inferred from its decision not to establish an indemnity reserve amount, because Pizzonia explained in his deposition that Illinois Union was never provided with sufficient information to establish an indemnity reserve amount.[49] Moreover, Illinois Union argues that Blue Cross's in house counsel testified that he could not recall whether Blue Cross set its own reserves for the Omega suit.[50] Illinois Union further contends that Blue Cross offers no credible evidence of any misrepresentation by Illinois Union and cannot carry its burden to show that Illinois Union acted arbitrarily.[51]

Illinois Union next argues that it has asserted a coverage position based on a good faith dispute as to the applicability of coverage for the claims in the underlying action and that it cannot

---

[45] *Id.* (citing Rec. Doc. 141-2 at 74).

[46] *Id.* (citing Rec. Doc. 141-2 at 275).

[47] *Id.* at 4–5 (citing Rec. Doc. 117-11).

[48] *Id.* at 5.

[49] *Id.* (citing Rec. Doc. 141-2 at 192).

[50] *Id.* at 6 (citing Rec. Doc. 117-5).

[51] *Id.*

be found to be in bad faith as a result.[52] Illinois Union asserts that Blue Cross mischaracterized the claims handler's testimony as to Blue Cross's claim.[53] In context, Illinois Union argues, it is clear that the claims handler did not disregard Omega's causes of action but rather needed more information than what was presented in Omega's petition in order to make a coverage determination.[54] Illinois Union argues that Blue Cross's reliance on Pizzonia's testimony is similarly misplaced.[55]

Illinois Union next argues that the facts and circumstances of the mediation in the underlying suit do not support a finding of bad faith.[56] According to Illinois Union, its refusal to fund the settlement was not arbitrary or capricious, but instead reflects its position that Blue Cross had not provided sufficient information to warrant more than a contribution on a cost of defense basis.[57] Illinois Union asserts that Blue Cross's in house counsel testified that Blue Cross intended to settle the underlying action regardless of Illinois Union and that settlement authority was authorized at a Blue Cross emergency board meeting within two weeks of the mediation.[58] Illinois Union contends that its offer to contribute $500,000 in defense costs was made in good faith in light of the outstanding coverage issues and Blue Cross's representations that it had been negotiating with its own money.[59] Illinois Union avers that Blue Cross improperly focuses on only

---

[52] *Id.*

[53] *Id.* at 7.

[54] *Id.* (Rec. Doc. 117-11 at 57).

[55] *Id.*

[56] *Id.* at 10.

[57] *Id.*

[58] *Id.* at 11 (citing Rec. Doc. 117-5; Rec. Doc. 141-4).

[59] *Id.*

one factor, *i.e.* the potential for excess liability, to the exclusion of other considerations identified by the Louisiana Supreme Court in identifying bad faith claims.[60]

Next, Illinois Union contends that it did not engage in bad faith discovery.[61] Illinois Union argues that it never denied or intended to deny coverage and that Pizzonia testified that Illinois Union requested factual information from Blue Cross, not privileged information.[62] Illinois Union notes that none of Blue Cross's representatives objected to Illinois Union's requests and that Illinois Union did not retain coverage counsel until March 2016, after the underlying action had been ongoing for five years.[63]

Illinois Union next argues that it acted reasonably to split its claims file.[64] Specifically, Illinois Union states that Pizzonia testified that Illinois Union did not split its claims file until the mediation because there was no perceived conflict between Illinois Union and Blue Cross until that time.[65] Moreover, Illinois Union avers, it fulfilled its affirmative adjustment duties under Section 22:1973.[66] Illinois Union contends that it diligently sought information about the underlying action and its potential coverage obligations but that Blue Cross failed to provide substantive information about Blue Cross's potential liability.[67]

Finally, Illinois Union objects to the admissibility of Blue Cross's expert report of James

---

[60] *Id.* at 11–12 (citing *Kelly v. State Farm Fire & Cas. Co.*, 169 So.3d 328 (La. 2015)).

[61] *Id.* at 12.

[62] *Id.* (citing Rec. Doc. 141-2 at 80).

[63] *Id.* at 13.

[64] *Id.*

[65] *Id.* (citing Rec. Doc. 141-2 at 76).

[66] *Id.* at 14.

[67] *Id.*

Schratz on summary judgment.[68] Illinois Union objects to the report, because it asserts that Blue Cross has not established: (1) that the coverage afforded by an insurance policy or whether an insurer acted in bad faith are properly the subject of expert interpretation; (2) that Schratz is qualified as an expert; (3) that Schratz's opinions are reliable; and (4) that Schratz's testimony will provide helpful information to the Court in determining the instant legal issue.[69] Additionally, Illinois Union contends that the expert report is irrelevant and constitutes hearsay.[70]

**B.**     *Illinois Union's Motion for Summary Judgment on Bad Faith*

       **1.**     **Illinois Union's Arguments in Support of the Motion for Summary Judgment**

In support of its motion for summary judgment, Illinois Union asserts that the insured has the burden of proving that an insurer acted in bad faith.[71] To meet its burden, Illinois Union states that Blue Cross must show that Illinois Union violated Section 22:1973 either by: (1) failing to adjust Blue Cross's claim fairly and promptly; or (2) failing to make a reasonable effort to settle the claim.[72] Additionally, Illinois Union asserts that Blue Cross must show that Illinois Union's conduct was arbitrary and capricious.[73]

Illinois Union argues that it had a reasonable basis for its reservation of rights.[74] Illinois Union notes that Illinois Union's claims handler testified that the initial complaint in the

---

[68] *Id.* at 15.

[69] *Id.*

[70] *Id.* at 16.

[71] Rec. Doc. 117-1 at 6 (citing *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552, 567 (E.D. La. 2010)).

[72] *Id.* (citing *Kelly v. State Farm Fire & Cas. Co.*, 169 So.3d 328, 340 (La. 2015)).

[73] *Id.* at 7 (citing *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009)).

[74] *Id.* at 8.

underlying action did not contain enough information to make a coverage determination.[75] Illinois Union asserts that its requests for information and cooperation were not arbitrary, as the Policy expressly requires that Blue Cross cooperate, and that Blue Cross's counsel acknowledged a duty of cooperation.[76] Moreover, Blue Cross asserts that its claims handler testified that Illinois Union sought information for the purpose of finding, not denying, coverage.[77] According to Illinois Union, Pizzonia also testified that Illinois Union was seeking facts concerning liability issues and substantiation of damages.[78]

Next, Illinois Union argues that the undisputed facts in the record indicate that it affirmatively investigated the Omega claims in the underlying action.[79] Illinois Union asserts that it made 15 requests to Blue Cross regarding the underlying action and that it specifically requested that Blue Cross carbon copy Illinois Union on substantive reports or provide defense counsel's analysis of liability, damages, and apportionment.[80] Illinois Union contends that it also sought to have teleconferences with Blue Cross regarding the underlying action.[81] According to Illinois Union, Blue Cross did not provide it with a liability/damages analysis until March 23, 2016, when Blue Cross's in house counsel wrote to Illinois Union opining that the case was "winnable" and attaching a memorandum prepared by Blue Cross's defense counsel.[82] Illinois Union contends

---

[75] *Id.* (citing Rec. Doc. 117-11).

[76] *Id.* at 9 (citing Rec. Doc. 117-5 at 131).

[77] *Id.* (citing Rec. Doc. 117-5 at 57, 169).

[78] *Id.*

[79] *Id.* at 10.

[80] *Id.* (citing Rec. Doc. 117-44; Rec. Doc. 117-2).

[81] *Id.* at 11 (citing Rec. Doc. 117-33).

[82] *Id.* at 12 (citing Rec. Doc. 117-53).

that Blue Cross's defense counsel's opinion contradicted that of Blue Cross's in house counsel, as he advised in the memorandum that there was a risk of a jury verdict of $10 million or higher.[83] When Illinois Union attempted to clarify the basis for Blue Cross's in house counsel's opinion, Illinois Union asserts that Blue Cross simply provided a motion for summary judgment, which did not assist in resolving any coverage issues.[84]

According to Illinois Union, only two days before the mediation, counsel for Blue Cross and Illinois Union exchanged multiple emails regarding the scheduling of a conference call and Illinois Union's outstanding request for an evaluation of damages in the underlying action.[85] Illinois Union avers that Blue Cross counsel advised that she would follow up with her client but that it never heard any further information.[86] Thus, Illinois Union contends that Blue Cross requested Illinois Union's attendance at a mediation with just five days' notice with authority to settle for policy limits, based on only a motion for summary judgment and correspondence from Blue Cross presenting contradictory views of the underlying action.[87] According to Illinois Union, it offered to contribute $500,000 to the settlement on a cost of defense basis, which Blue Cross refused, and Illinois Union rejected Blue Cross's demand for the Policy limits.[88]

Illinois Union argues that its refusal to tender the Policy limits was not arbitrary or capricious, but rather based on a reasonable coverage position.[89] Illinois Union contends that all

---

[83] *Id.* (citing Rec. Doc. 117-54).

[84] *Id.* at 13.

[85] *Id.* at 15 (citing Rec. Docs. 117-74, 117-76).

[86] *Id.* (citing Rec. Doc. 117-75).

[87] *Id.* at 15–16.

[88] *Id.* at 16 (citing Rec. Doc. 117-78).

[89] *Id.* at 17.

of the factors articulated by the Louisiana Supreme Court to evaluate an insurer's reasonable efforts to settle a claim weigh against a finding of bad faith here.[90] Moreover, Illinois Union asserts, it accepted and fulfilled its obligation to reimburse Blue Cross for its defense costs in excess of the self-insured retention.[91]

Finally, Illinois Union argues that the specific allegations set forth in its counterclaim regarding bad faith are not supported by the evidence. First, Illinois Union contends that Blue Cross has offered no evidence that Illinois Union was dishonest in handling the underlying claim.[92] Second, Illinois Union argues that there is no evidence that Illinois Union put its interests above that of its insured, because Illinois Union asserts, it never denied coverage and acted in accordance with the Policy.[93] Third, Illinois Union argues that it participated in the mediation and complied with its affirmative duty under Section 22:1973 to make reasonable settlement efforts.[94] Fourth, Illinois Union asserts that it filed the instant lawsuit for a facially valid purpose, *i.e.* to determine the extent of its coverage obligations, if any.[95] Fifth, Illinois Union asserts that it was reasonable in refusing to tender the Policy limits.[96] Sixth, Illinois Union argues that it made good faith efforts to settle the claims against Blue Cross.[97] Seventh, Illinois Union argues that it did not deny

---

[90] *Id.* (citing *Kelly v. State Farm Fire & Cas. Co.*, 169 So.3d 328, 340 (La. 2015)).

[91] *Id.* at 18.

[92] *Id.*

[93] *Id.* at 18–19 (citing Rec. Doc. 117-78).

[94] *Id.* at 19.

[95] *Id.*

[96] *Id.*

[97] *Id.* at 20.

coverage but reserved its rights under the Policy.[98] Finally, Illinois Union contends that the allegation that Illinois Union did not respond promptly to Blue Cross's written or oral communications regarding settlement demands and offers is disingenuous, because the sole settlement demand that Blue Cross communicated to Illinois Union was at the mediation.[99]

## 2.    Blue Cross's Arguments in Opposition to Illinois Union's Motion

In opposition, Blue Cross argues that it has made a showing of bad faith based on the testimony of Illinois Union's employees, which demonstrates the lack of diligence exercised by Illinois Union in adjusting Blue Cross's claim in the underlying action.[100] Thus, Blue Cross argues, Illinois Union must rebut Blue Cross's showing and cannot do so by simply referencing Blue Cross's duty to cooperate.[101] Blue Cross further contends that Illinois Union cannot establish that it did not act in bad faith as a matter of law by showing that it took any positive action, as such a low standard would contradict Louisiana case law establishing that an insurer must act with its insured's best interests in mind.[102]

Blue Cross next argues that Illinois Union did not have a reasonable basis for refusing to fund the settlement in the underlying action.[103] Blue Cross argues that Illinois Union employee Pizzonia's testimony that some of the claims in the underlying action may have been covered stands in "stark contrast" to Illinois Union's consistent denial of coverage.[104] According to Blue

---

[98] *Id.*

[99] *Id.*

[100] Rec. Doc. 148 at 8.

[101] *Id.*

[102] *Id.* (citing *Kelly*, 169 So.3d at 338).

[103] *Id.* at 9.

[104] *Id.* (citing 148-1).

15

Cross, the failure of Illinois Union to conduct a basic coverage analysis precludes a finding that Illinois Union had a reasonable basis for reserving its right to deny coverage.[105]

Next, Blue Cross asserts that it provided regular status updates to Illinois Union throughout the underlying action.[106] Blue Cross also points to Illinois Union's claims handler's testimony that she had teleconferences with Blue Cross to discuss the status of the claim and that they were helpful.[107] According to Blue Cross, Illinois Union's failure to unequivocally convey its denial of coverage, despite its intention to deny coverage, constitutes a misrepresentation of pertinent facts prohibited by Section 22:1973.[108]

As to the duty to cooperate, Blue Cross asserts that it was not required to provide privileged analyses of liability or damages to Illinois Union and at any rate, that Blue Cross informed Illinois Union that it did not have any such analyses.[109] Moreover, Blue Cross contends that Illinois Union's communications to Blue Cross that there was no coverage for the claims asserted against Blue Cross in the underlying action constituted a material breach of the policy and relieved Blue Cross of its obligation to cooperate with Illinois Union.[110] Blue Cross further argues that even if its refusal to provide Illinois Union with privileged liability and damages analyses constituted a breach of the cooperation clause, any such breach was not material and would therefore not relieve Illinois Union from its obligations under the Policy.[111]

---

[105] *Id.*

[106] *Id.* at 10–11.

[107] *Id.* at 11 (citing Rec. Doc. 148-3).

[108] *Id.* at 11–12.

[109] *Id.* at 12–13 (citing Rec. Doc. 148-22).

[110] *Id.* at 14. (citing Rec. Doc. 148-3).

[111] *Id.* at 14–15 (citing *Williams v. Lowe*, 831 So.2d 334, 336 (La. App. 5 Cir. 10/16/02)).

16

Next, Blue Cross argues that demanding information from an insured does not satisfy Illinois Union's affirmative duty to investigate and adjust claims in good faith.[112] Blue Cross maintains that the filings in the underlying suit were readily available to Illinois Union and that Illinois Union had a duty to independently investigate the claims in the underlying action.[113] According to Blue Cross, Illinois Union had enough information to determine whether there was coverage available for the underlying claims and its assertion of a lack of information fails to establish that it is entitled to judgment as a matter of law.[114] Blue Cross further argues that Illinois Union did not make reasonable efforts to settle the underlying action and unreasonably withheld consent, despite the risks that Blue Cross faced if it were to go to trial.[115]

Finally, Blue Cross asserts that Illinois Union has not shown that it did not act in bad faith pursuant to the five factors set forth by Louisiana Supreme Court for determining whether an insurer acted in bad faith.[116] Rather, Blue Cross argues, Illinois Union simply states that Blue Cross failed to provide sufficient analyses to evaluate the claims.[117] Because, Blue Cross contends, this assertion is without factual support, Illinois Union's motion for summary judgment should be denied.[118]

### 3.    Illinois Union's Reply in Further Support of the Motion to Dismiss

In reply, Illinois Union contends that Blue Cross does not address the correct legal standard

---

[112] *Id.* at 15.

[113] *Id.* at 16.

[114] *Id.* at 17.

[115] *Id.* at 17–18.

[116] *Id.* at 18 (citing *Kelly*, 169 So.3d at 340).

[117] *Id.* at 19.

[118] *Id.*

for bad faith, because it fails to recognize that the insured must bear the burden of demonstrating that Illinois Union's conduct was arbitrary, capricious, or without probable cause.[119] Illinois Union argues that Blue Cross incorrectly applies the factors established by the Louisiana Supreme Court in *Kelly v. State Farm Fire & Casualty Company* to make a general determination of bad faith on the part of the insurer but that those factors are limited to analyzing whether an insurer acted in bad faith only with regard to its settlement efforts.[120] According to Illinois Union, the undisputed facts in the record indicate: (1) that Illinois Union had a good faith basis for its coverage position and handing of Blue Cross's claim; and (2) that it had a good faith basis to refuse to fund the settlement with Omega.[121]

Illinois Union contends that Blue Cross, as the insured, bears the burden of demonstrating that an incident falls within the Policy's terms and that Blue Cross's failure to provide sufficient information regarding the underlying action to Illinois Union bars its bad faith claim.[122] Illinois Union asserts that it was never seeking privileged information from Blue Cross and that Blue Cross, a sophisticated insurer, could have provided non-privileged information to Illinois Union to demonstrate coverage of its claims but failed to do so.[123]

### III. Law and Analysis

#### A.    *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits

---

[119] Rec. Doc. 174 at 1–2.

[120] *Id.* at 2 (citing 169 So.3d at 340).

[121] *Id.* at 3.

[122] *Id.* at 3–4.

[123] *Id.* at 5.

18

show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[124] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[125] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[126] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[127] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[128]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[129] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[130] To withstand a motion for summary judgment, the nonmoving party must

---

[124] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[125] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[126] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[127] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[128] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[129] *Celotex*, 477 U.S. at 323.

[130] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

show that there is a genuine issue for trial by presenting evidence of specific facts.[131] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[132] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[133]

## B. Louisiana Revised Statute § 22:1973

Louisiana Revised Statute § 22:1973 of the Louisiana Insurance Code states that an insurer "owes to his insured a duty of good faith and fair dealing."[134] Section 22:1973(A) states the insurer "has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."[135] The statute then lists six acts that constitute a breach of the insurer's duties imposed in Subsection A if "knowingly committed or performed by an insurer."[136]

The six enumerated acts are:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

---

[131] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[132] *Little*, 37 F.3d at 1075.

[133] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[134] La. Rev. Stat. § 22:1973(A).

[135] *Id.*

[136] La. Rev. Stat. § 22:1973(B).

(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

(4) Misleading a claimant as to the applicable prescriptive period.

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

(6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.[137]

The insured bears the burden of demonstrating that an insurer acted in bad faith.[138] Moreover, "the determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case."[139] Because Section 1973 is penal in nature, it should be strictly construed.[140] If an insurer is found to violate Section 1973, "the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."[141]

---

[137] *Id.*

[138] *See Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So.2d 1012.

[139] *Smith v. Audubon Ins. Co.*, 95-2057 (La. 9/5/96), 679 So.2d 362, 377.

[140] *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15), 169 So.3d 328. *See also Durio v. Horace Mann Ins. Co.*, 11-0084 (La. 10/25/11), 74 So.3d 1159, 1170.

[141] La. Rev. Stat. § 22:1973(C).

*C.      Analysis*

In its motion for summary judgment, Blue Cross argues that it is entitled to summary judgment on Count III of its counterclaims against Illinois Union for bad faith under Louisiana Revised Statute § 22:1973.[142] Illinois Union also argues that it is entitled to summary judgment on Blue Cross's counterclaim for bad faith.[143] Because both parties request summary judgment on the issue of bad faith, the Court will address the parties' arguments together in turn.

As noted *supra*, Section 22:1973(A) states that an insurer "has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."[144] The Louisiana Supreme Court has found that the insurer's "obligation to act in good faith is triggered by knowledge of the particular situation, which knowledge '[t]he insurer has an affirmative duty' to gather during the claims process."[145] In other words, an insurer has a duty to conduct "a thorough investigation" and to consider "the evidence developed in the investigation" when determining whether to settle or litigate.[146]

An insurer can be found liable under Section 22:1973(B)(1) "for misrepresenting or failing to disclose facts," even if those facts are not related to the insurance policy's coverage.[147] Additionally, Section 22:1973(B)(5) establishes that an insurer can be found in breach of its duty

---

[142] Rec. Doc. 115 at 1.

[143] Rec. Doc. 117 at 1.

[144] La. Rev. State. § 22:1973(A).

[145] *Kelly*, 169 So.3d at 341 (citing La. Rev. Stat. § 22:1973).

[146] *See Smith*, 679 So.2d at 377.

[147] *Kelly*, 169 So.3d at 344.

of good faith if it fails to pay a claim within sixty days following receipt of satisfactory proof of loss if the failure to pay is "arbitrary, capricious, or without probable cause."[148] "Arbitrary and capricious" has been interpreted by the Louisiana Supreme Court to mean "vexatious," and a "vexatious refusal to pay means unjustified or without reasonable or probable cause or excuse."[149] "An insurer does not act arbitrarily and capriciously, however, when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage."[150] Ultimately, the determination of whether an insured acted in bad faith depends on the facts and circumstances of a particular case.[151]

Here, Blue Cross argues that there are no genuine issues of material fact that Illinois Union acted in bad faith.[152] In particular, Blue Cross argues that Illinois Union acted in bad faith, because: (1) Illinois Union acted in bad faith in adjusting Blue Cross's claim for coverage in the underlying action; (2) Illinois Union failed to make a reasonable effort to settle the claim; (3) Illinois Union failed to perform a diligent, thorough investigation of the underlying claims; (4) Illinois Union withheld its written consent in bad faith; (5) Illinois Union misrepresented pertinent facts; and (6) Illinois Union failed to indemnify Blue Cross for its covered damages in bad faith.[153] In particular, Blue Cross points to Illinois Union's claims notes stating that Illinois Union met with a Blue Cross executive and "reiterated [its] coverage position that it does not appear that there are

---

[148] La. Rev. Stat. §22:1973(B)(5).

[149] *Reed*, 857 So.2d at 1021.

[150] *Dickerson v. Lexington Ins. Co.*, 556 F.3d at 299 (citing *Calogero v. Safeway Ins. Co. of Louisiana*, 1999-1625 (La. 1/19/00), 753 So. 2d 170, 174).

[151] *See id.*

[152] Rec. Doc. 115 at 1.

[153] Rec. Doc. 115-1 at 11–16.

any covered claims as this is a claim for underpayment of medical benefits, which falls squarely outside the loss definition of the policy."[154] Blue Cross further points to testimony of Illinois Union's claims handler in which she testified that there was no indemnity reserve established for the underlying action, because Illinois Union "had always seen this as a defense expense case."[155] Blue Cross also points to the claims handler's testimony that it was her position that there was no coverage for any judgment or settlement in the Omega case and that this position was communicated to Blue Cross verbally in 2014 and later by reservation of rights letters.[156] Additionally, Blue Cross points to the claims handler's testimony that she sent a memo from Blue Cross's defense counsel in the underlying action to Illinois Union's coverage counsel and avers that this same coverage counsel represents Illinois Union in the instant action.[157]

Blue Cross notes that the conclusion that there was no coverage under the Policy, which was communicated in reservation of rights letters, conflicts with the testimony of Pizzonia, head of Illinois Union's medical risk claims department, in which he testified that damages being sought in connection with fraud were separate and apart from amounts owed under a contract and that a LUTPA claim and a claim for negligent misrepresentation were causes of action separate from a breach of contract claim.[158]

In support of its contention that Illinois Union did not properly investigate Blue Cross's claim, Blue Cross further points to Pizzonia's testimony that he never made any effort to access

---

[154] Rec. Doc. 115-4 at 2.

[155] *Id.* at 5.

[156] *Id.* at 6.

[157] *Id.* at 8.

[158] Rec. Doc. 115-6 at 6, 7.

the state court's docket to obtain relevant documents from the underlying action and that he acknowledged receipt of the summary judgment motion in the underlying action but never read it in its entirety.[159] Blue Cross notes that Pizzonia also testified that he knew there was a pressing need to engage in mediation in the underlying action but never asked Blue Cross why that was the case.[160] In further support of its argument that Illinois Union did not properly handle Blue Cross's claim, Blue Cross points to Pizzonia's testimony that Illinois Union did not split its file between liability and coverage issues until it filed a declaratory judgment against Blue Cross.[161]

Finally, in support of its contention that Illinois Union withheld its written consent in bad faith and failed to make reasonable efforts to settle, Blue Cross contends that Illinois Union withheld consent even though trial was quickly approaching and Blue Cross had communicated to Illinois Union that it faced potential damages in excess of Blue Cross's available coverage.[162] Blue Cross also maintains that Illinois Union did not have a reasonable basis for refusing to pay the Omega settlement in the underlying action, as some of the allegations in the underlying action sounded in tort and Illinois Union failed to independently investigate each allegation in the underlying petition, despite the cooperation of Blue Cross.[163] In support of its contention that it cooperated and provided sufficient information, Blue Cross points to correspondence in evidence of its status updates to Illinois Union throughout the litigation.[164] Blue Cross also points to

---

[159] *Id.* at 4, 10.

[160] *Id.* at 11.

[161] *Id.* at 3.

[162] Rec. Doc. 1 at 6–7.

[163] Rec. Doc. 148 at 8–9.

[164] Rec. Docs. 148-8–148-17.

testimony of Pizzonia that indicates that he, as Illinois Union's representative at the mediation, was provided updates during the mediation and that Pizzonia did not object on behalf of Illinois Union to the settlement offers extended by Blue Cross to Omega.[165]

By contrast, Illinois Union argues that there are no genuine issues of material fact that it did not act in bad faith.[166] In particular, Illinois Union argues that summary judgment in its favor is proper, because : (1) Illinois Union properly handled Blue Cross's claims and made reasonable efforts to settle the claims, based on the knowledge it could develop about the claims at the time; (2) Blue Cross failed to cooperate and to provide "meaningful substantive information" about Blue Cross's potential liability in the underlying action; and (3) the Policy provides no coverage for Blue Cross's damages in the underlying action.[167] In support of its motion for summary judgment, Illinois Union points to its claims handler's testimony that the initial complaint in the underlying action did not contain enough information to make a coverage determination.[168] Illinois Union notes that the claims handler also testified that Illinois Union's requests for additional information regarding the allocation of damages to specific claims in the underlying action was for the purpose of finding coverage.[169] Illinois Union also points to Pizzonia's testimony that Illinois Union was looking for facts regarding the liability issues and substantiation of damages.[170]

In support of its assertion that it fully, fairly, and promptly adjusted Blue Cross's claims,

---

[165] Rec. Doc. 115-6 at 12, 13.

[166] Rec. Doc. 117 at 1.

[167] Rec. Doc. 117-1 at 1–2.

[168] Rec. Doc. 117-11 at 57.

[169] *Id.* at 148.

[170] Rec. Doc. 117-72 at 80, 82.

Illinois Union points to fifteen requests that it made to Blue Cross regarding the claims in the underlying action.[171] Additionally, Illinois Union notes that Blue Cross provided Illinois Union with a copy of its motion for summary judgment in the underlying action almost five months after it was filed and that Blue Cross's counsel acknowledged in his deposition that the summary judgment motion might have been generally responsive to Illinois Union's requests for additional information concerning liability damages in the underlying action.[172]

Illinois Union also points to correspondence from Blue Cross's in-house counsel in which he stated that he felt the underlying action was a "very winnable case," as well as a memorandum from Blue Cross's defense counsel in which he advised that a jury verdict in excess of $10 million was a possible risk.[173] Additionally, Illinois Union points to its request for clarification as to these contradictory assessments.[174] Illinois Union also notes that only two days before the scheduled mediation, it repeated its request for an evaluation of the damages in the underlying action but avers that it never received a response to its request.[175]

In support of its assertion that it made reasonable efforts to settle the claims in the underlying action, Illinois Union notes that it agreed to attend the mediation with only five days' notice.[176] Illinois Union also points to the fact that it offered to contribute $500,000 to the settlement on a cost of defense basis and that Blue Cross rejected the offer and demanded the

---

[171] Rec. Docs. 117-10–117-39.

[172] Rec. Doc. 117-58; Rec. Doc. 117-59; Rec. Doc. 117-5 at 201.

[173] Rec. Docs. 117-53, 117-54.

[174] Rec. Docs. 117-47.

[175] Rec. Docs. 117-74, 117-76.

[176] Rec. Doc. 117-64.

Policy's limits.[177]  In support of its argument that Blue Cross intended to settle regardless of Illinois Union's contribution, Illinois Union points to Blue Cross's counsel's testimony that "[w]e were going to settle the case" and that Illinois Union could have contributed but didn't respond reasonably to his request for the Policy limits.[178] Finally, Illinois Union notes that Blue Cross never made any other settlement demand aside from the demand for the Policy limits.[179]

Based on the foregoing, the Court finds that both parties have pointed to evidence to raise disputes of material fact as to whether Illinois Union acted in bad faith under Louisiana Revised Statute § 22:1973. Blue Cross and Illinois Union have each pointed to conflicting evidence regarding Illinois Union's affirmative duty to adjust claims fairly and make reasonable efforts to settle under Section 22:1973(A). The Louisiana Supreme Court has articulated five non-exclusive factors to consider in determining whether the insurer acted in bad faith with regards to its efforts to settle a claim under the facts and circumstances of a particular case.[180]  The five factors are: (1) the probability of the insured's liability; (2) the extent of the damages incurred by the claimant; (3) the amount of the policy limits; (4) the adequacy of the insurer's investigation; and (5) the openness of communications between the insurer and the insured.[181] Here, as presented *supra*, Blue Cross and Illinois Union have both pointed to conflicting evidence regarding the probability of the insured's liability, the extent of the damages incurred by Blue Cross, the adequacy of Illinois Union's investigation, and the openness of communications between Blue Cross and Illinois

---

[177] Rec. Doc. 117-72 at 273.

[178] Rec. Doc. 117-5 at 321–322.

[179] Rec. Doc. 117-79.

[180] *Kelly*, 169 So.3d at 340 (internal citation omitted).

[181] *Id.*

Union.

Likewise, each of the parties has pointed to contradictory evidence as to whether Illinois Union breached any of the enumerated duties in Section 22:1973(B) that would establish a bad faith claim. For example, in support of its contention that Illinois Union failed to pay a claim within sixty days after receiving satisfactory proof of loss in an arbitrary or capricious manner, Blue Cross has pointed to testimony of Illinois Union's employee suggesting that some of the causes of action in the underlying petition were separate and apart from breach of contract[182] and that Illinois Union did not attempt to access the state court docket in the underlying action to conduct a thorough investigation of the claims at issue.[183] By contrast, Illinois Union points to correspondence suggesting that it requested an analysis of the damages allocated to claims in the underlying action[184] and testimony that Illinois Union's employees requested analyses of damages in the underlying action on multiple occasions in order to establish coverage.[185]

Ultimately, the determination of whether an insured acted in bad faith depends on the facts and circumstances of a particular case.[186] Where, as here, material disputes of fact exist as to whether an insurer acted in bad faith in violation of Louisiana Revised Statute § 22:1973, summary judgment is not appropriate in favor of either party.[187] In other words, Blue Cross has failed to show that Illinois Union acted in bad faith as a matter of law such that summary judgment in its

---

[182] Rec. Doc. 115-6 at 4, 7.

[183] *Id.* at 4.

[184] Rec. Docs. 117-74, 117-76.

[185] Rec. Doc. 117-72 at 80, 82.

[186] *Smith v. Audubon Ins. Co.*, 95-2057, (La. 9/5/96), 679 So.2d 362, 377.

[187] The Court notes Illinois Union's objection to the expert report attached to Blue Cross's motion for summary judgment. Rec. Doc. 141 at 15. However, because the Court finds that it would reach the same conclusion regardless of whether it considered the expert report, it need not address the objection.

favor is proper, and Illinois Union has failed to show that it did not act in bad faith in any way as a matter of law such that summary judgment in its favor is proper. Accordingly, both motions for summary judgment on Blue Cross's bad faith counterclaim are denied.

## IV. Conclusion

Based on the foregoing, the Court concludes that there are genuine issues of material fact precluding summary judgment for either party regarding Blue Cross's counterclaim for bad faith under Louisiana Revised Statute § 22:1973.

Accordingly,

**IT IS HEREBY ORDERED** that Blue Cross's "Motion for Summary Judgment on Bad Faith"[188] and Illinois Union's "Motion for Summary Judgment on Bad Faith"[189] are **DENIED.**

**NEW ORLEANS, LOUISIANA**, this ___12th___ day of June, 2017.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[188] Rec. Doc. 115.

[189] Rec. Doc. 117.