| | |
|---|---|
| **ILLINOIS UNION INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-6604** |
| **LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY** | **SECTION: "G" (2)** |

## ORDER

Pending before the Court are Defendant/Counter Claimant Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana's ("Blue Cross") "Motion for Summary Judgment on Coverage Obligations"[1] and Plaintiff/Counter Defendant Illinois Union Insurance Company's ("Illinois Union") "Motion for Summary Judgment on Coverage."[2] Having reviewed the motions for summary judgment, the memoranda in support and in opposition to each motion, the record, and the applicable law, the Court will deny Blue Cross's motion and deny in part and grant in part Illinois Union's motion.[3]

## I. Background

### A. *Factual Background*

### 1. The Policy at Issue

On May 19, 2016, Illinois Union filed a complaint for declaratory judgment against Blue Cross.[4] This matter involves the rights and obligations of Illinois Union under a Managed Care

---

[1] Rec. Doc. 116.

[2] Rec. Doc. 118.

[3] Rec. Doc. 125-1 at 2.

[4] Rec. Doc. 1.

Organization Errors and Omissions Liability Policy ("the Policy") that it issued to Blue Cross for the policy period of May 25, 2007, to January 1, 2009.[5] In relevant part, the Policy states that Illinois Union "shall pay on behalf of any insured any Loss which [Blue Cross] is legally obligated to pay as a result of any Claim that is first made against the Insured during the Policy Period . . . . "[6] Loss is defined to include "Defense Expenses and any monetary amount that an Insured is legally obligated to pay as a result of a Claim . . . ."[7] The Policy states that loss does not include, *inter alia*: "fees, amounts, benefits, obligations or coverages owed under any contract with any party . . ., health care plan or trust, insurance or workers compensation policy or plan or program of self insurance;" "non-monetary or equitable relief or redress in any form;" and "matters which are uninsurable" under Louisiana law.[8] Additionally, the Policy contains a consent to settle clause requiring the insured to obtain the insurer's written consent before settling a claim, as well as a cooperation clause requiring the insured to provide the insurer with "all information, assistance and cooperation that the Insurer reasonably requests."[9]

### 2. The Underlying Action

In this action, Illinois Union seeks a declaration as to the extent of its obligation to Blue Cross with respect to a settlement reached by Blue Cross with Omega Hospital, LLC ("Omega") in a separate lawsuit filed by Omega against Blue Cross in state court ("the Omega Lawsuit" or

---

[5] *Id* at 3.

[6] Rec. Doc. 118-5 at 8.

[7] *Id.* at 9.

[8] *Id.* at 10. The parties do not dispute that Louisiana law applies to the instant dispute. *See* Rec. Doc. 116-1 at 8 (Blue Cross citing Louisiana law); Rec. Doc. 118-1 at 6 (Illinois Union citing Louisiana law).

[9] *Id.* at 16.

"the underlying action").[10] In the Omega Lawsuit, Omega alleged that Blue Cross engaged in "systematic, sophisticated, and intentional conduct to avoid paying Omega" for services rendered to patients who were owed benefits, obligations, or coverage under Blue Cross health care plans.[11] Specifically, Omega alleged five causes of action: (1) violation of Louisiana's Unfair Trade Practices Act ("LUTPA"); (2) fraud; (3) negligent misrepresentation; (4) detrimental reliance; and (5) unjust enrichment.[12]

Illinois Union alleges that Blue Cross settled the underlying action without Illinois Union's consent in violation of the Policy's requirement that Blue Cross obtain Illinois Union's written consent to settle in order to obtain coverage.[13] Illinois Union further alleges that even if Blue Cross's unilateral settlement did not violate the Policy's written consent requirement, coverage is precluded under the Policy because contractual damages of this kind do not constitute covered "loss" under the Policy.[14]

## B.    *Procedural Background*

On May 19, 2016, Illinois Union filed a complaint for declaratory judgment against Blue Cross.[15] On July 7, 2016, Blue Cross filed a counterclaim against Illinois Union for a declaration that Illinois Union must indemnify Blue Cross for costs incurred to defend and settle the Omega

---

[10] Rec. Doc. 1 at 1.

[11] *Id.* at 2.

[12] Rec. Doc. 1-2 at 8–11.

[13] *Id.* at 9.

[14] *Id.* at 10.

[15] Rec. Doc. 1.

Lawsuit.[16] Blue Cross also brings counterclaims for breach of contract and statutory bad faith pursuant to Louisiana Revised Statute § 22:1973.[17]

On April 11, 2017, Blue Cross filed its currently pending motion for summary judgment on coverage obligations.[18] On April 18, 2017, Illinois Union filed an opposition to the motion.[19] With leave of Court, Blue Cross filed a reply in further support of the motion on April 28, 2017.[20]

On April 12, 2017, Illinois Union filed its currently pending motion for summary judgment on coverage obligations.[21] On April 18, 2017, Blue Cross filed an opposition to the motion.[22] With leave of Court, Illinois Union filed a reply in further support of the motion for summary judgment on April 28, 2017.[23]

## II. Parties' Arguments

### A.    *Blue Cross's Motion for Summary Judgment on Coverage Obligations*

Blue Cross moves for summary judgment in its favor with respect to: (1) Count I of Illinois Union's Complaint, in which Illinois Union seeks a declaratory judgment that Illinois Union is not required to indemnify Blue Cross for the underlying settlement due to the fact that Blue Cross did not obtain Illinois Union's consent; (2) Count II of Illinois Union's Complaint, which seeks a

---

[16] Rec. Doc. 11.

[17] *Id.*

[18] Rec. Doc. 116.

[19] Rec. Doc. 147.

[20] Rec. Doc. 176.

[21] Rec. Doc. 118.

[22] Rec. Doc. 146.

[23] Rec. Doc. 172.

declaratory judgment that Illinois Union has no obligation to indemnify Blue Cross due to the fact that the settlement encompasses damages that are not covered under the Policy; (3) Count I of Blue Cross's counterclaim for a declaratory judgment that Illinois Union must indemnify Blue Cross for the settlement in the underlying action; and (4) Count II of Blue Cross's counterclaim for breach of contract as a result of Illinois Union's failure to indemnify Blue Cross for the settlement in the underlying action.[24]

### 1.    Blue Cross's Arguments in Support of the Motion for Summary Judgment

#### a.    *The Policy's Definition of Loss*

In support of its motion for summary judgment, Blue Cross represents that the Policy at issue obligates Illinois Union to pay loss resulting from claims "alleging error or omissions" in the performance of Blue Cross's managed care professional services.[25] According to Blue Cross, "loss" is defined broadly in the Policy to include "Defense Expenses and any monetary amount that an Insured is legally obligated to pay as a result of a Claim" but excludes "fees, amounts, limits, benefits, obligations or coverages owed under any contract."[26] Blue Cross contends that Illinois Union improperly invokes this exclusion to deprive Blue Cross of coverage.[27]

Blue Cross asserts that in the underlying action, Omega Hospital alleged that Blue Cross improperly reduced the amount of its reimbursement payments to Omega Hospital for medical

---

[24] Rec. Doc. 116-1 at 17.

[25] *Id.* at 10.

[26] *Id.*

[27] *Id.*

services and supplies.[28] Blue Cross argues that damages resulting from Omega Hospital's tort-based causes of action are clearly covered under the Policy as "loss" and are not excluded by the carve out for benefits owed under a contract.[29] According to Blue Cross, Omega Hospital pleaded in the underlying action that it is an out of network hospital, thus acknowledging that it has no contract with Blue Cross for the services it renders to Blue Cross insureds.[30] Moreover, Blue Cross avers, the court in the underlying action ruled that certain of Omega Hospital's claims sounded in tort rather than contract.[31] Blue Cross also represents that another section in the Eastern District of Louisiana held in the underlying action that Omega's claims did not constitute benefits due under an ERISA health plan and that remand to state court of the Omega case was therefore necessary.[32] Blue Cross further avers that the head of Illinois Union's medical risk claims department acknowledged that many of the claims asserted by Omega in the underlying action sought damages separate from amounts due under a contract.[33] Thus, Blue Cross argues, the policy exclusion on which Illinois Union relies does not bar coverage and it is entitled to summary judgment.[34]

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 11.

[33] *Id.*

[34] *Id.*

### b. The Policy's Consent to Settle Clause

Next, Blue Cross argues that Illinois Union may not raise lack of consent as a coverage defense.[35] According to Blue Cross, under the terms of the Policy, Blue Cross may settle any claim with Illinois Union's written consent, which "shall not be unreasonably withheld."[36] Blue Cross argues that an insurer cannot unreasonably refuse to consent to a settlement such that the insured is forced to risk significant liability at trial.[37] Here, Blue Cross argues that it was facing significant risks if it chose a jury trial in the underlying action and that Illinois Union nevertheless unreasonably withheld its written consent to settlement.[38] Under such circumstances, Blue Cross argues, Illinois Union's unreasonably withheld consent left Blue Cross free to settle the underlying action.[39]

Blue Cross next asserts that despite withholding its written consent, Illinois Union verbally consented to the settlement.[40] According to Blue Cross, Illinois Union's representative at the mediation in the underlying action, Anthony Pizzonia ("Pizzonia"), testified that he often gives verbal approval of settlements and that such approval is sufficient to comply with the policy provision requiring Illinois Union's consent to settle.[41] Blue Cross asserts that Illinois Union

---

[35] *Id.* at 12.

[36] *Id.*

[37] *Id.* (citing *Fed. Ins. Co. v. New Hampshire Ins. Co.*, No. 03-385, 2010 WL 28568, at *5 (M.D. La. Jan. 4, 2010)).

[38] *Id.* at 12–13.

[39] *Id.* at 13.

[40] *Id.*

[41] *Id.* (citing Pizzonia Dep. Tr. at 122:18-123:10).

verbally consented to the settlement by agreeing to pay a portion of the settlement at the mediation.[42]

Blue Cross next argues that where an insurer wrongfully denies coverage, the insured reasonably believes that "it may be cast in judgment if brought to trial," and there is no evidence that the insured "improperly entered into th[e] settlement," the insured is entitled to settle the claim.[43] Here, Blue Cross asserts that Illinois Union repeatedly informed Blue Cross that it believed that the damages sought by Omega were amounts owed under a contract and therefore excluded from coverage.[44] Thus, Blue Cross argues, Illinois Union denied coverage for Blue Cross's claim and relieved Blue Cross of a need to obtain Illinois Union's consent before settling.[45]

### c.     *Breach of Contract*

Finally, Blue Cross argues that Illinois Union breached its contractual obligations to Blue Cross when it refused to indemnify Blue Cross as required under the Policy.[46] Blue Cross avers that it paid Illinois Union premiums for the Policy to cover exactly the type of claim at issue in the underlying action.[47] Blue Cross asserts that Illinois Union is obligated to indemnify Blue Cross under the terms of the Policy and that Blue Cross has performed all conditions required by the Policy.[48] According to Blue Cross, it has been damaged by Illinois Union's failure to perform its

---

[42] *Id.*

[43] *Id.* at 14 (citing *Singleton v. United Tugs, Inc.*, 710 So.2d 347, 352 (La. App. 4 Cir. 3/18/98)).

[44] *Id.* at 15.

[45] *Id.* (citing Encinas Dep. Tr. 63:10-64:15; Rec. Doc. 116-11).

[46] *Id.*

[47] *Id.* at 16.

[48] *Id.*

contractual obligations because it has been deprived of the benefit of the insurance protection for which it paid premiums and has been forced to retain attorneys to defend against this action and pursue coverage under the Policy.[49] Because, Blue Cross argues, it made a timely demand upon Illinois Union to perform its obligations under the Policy and Illinois Union has failed to do so, Illinois Union breached and continues to breach its contractual obligations to Blue Cross.[50]

## 2. Illinois Union's Arguments in Opposition to the Motion for Summary Judgment

### a. The Policy's Definition of Loss

In opposition to Blue Cross's motion for summary judgment, Illinois Union argues that the Policy does not cover the voluntary settlement payment to Omega in the underlying action.[51] Illinois Union contends that it is Blue Cross's burden to prove that the settlement payment falls within the Policy's terms.[52] Illinois Union represents that the Policy states that Illinois Union "shall pay on behalf of any Insured any loss which the Insured is legally obligated to pay as a result of any Claim."[53] According to Illinois Union, "loss" is defined as "any monetary amount that an Insured is legally obligated to pay as a result of a Claim," but the definition of loss does not include "amounts" or "benefits" "owed under any contract with any party or any health care plan," "equitable relief or redress in any form," and "matters which are uninsurable under the law."[54]

---

[49] *Id.*

[50] *Id.*

[51] Rec. Doc. 147 at 1.

[52] *Id.* at 2 (citing *Doerr v. Mobil Oil Corp.*,774 So. 2d 119, 124 (La. 2000)).

[53] *Id.* (citing Rec. Doc. 118-5).

[54] *Id.*

Illinois Union argues that Blue Cross, as the insured, bears the initial burden of proof to satisfy the Policy's defined terms as incorporated into the insuring agreement.[55] Illinois Union further contends that in the context of insuring agreements providing coverage for loss, courts hold that the insured bears the burden to prove satisfaction of the loss definition, even where the definition identifies what does not constitute a loss.[56] According to Illinois Union, the Policy's clear definition of what does and does not constitute a loss is not a burden-shifting exclusion but rather a "proper definition."[57] Illinois Union argues that Blue Cross has not carried its burden to prove that the settlement payment falls within the insuring agreement and therefore cannot prove coverage.[58]

### b.    *Contractual Nature of Damages*

Next, Illinois Union argues that Blue Cross's settlement with Omega was for damages that were contractual in nature and does not constitute a loss under the Policy.[59] Illinois Union asserts that Omega maintained that it had an implied contract with Blue Cross in the underlying action and that the state court in the underlying action found that Omega had made allegations based on contract and tort.[60] Illinois Union represents that Blue Cross admitted that it had an obligation to pay Omega, independent of any tortious behavior, and argues that these amounts paid pursuant to

---

[55] *Id.* (citing *Fielding v. Cas. Reciprocal Exch.*, 331 So. 2d 186, 188 (La. App. 3d Cir. 1976)).

[56] *Id.* (citing *Medill v. West. Port Ins. Corp.*, 143 Cal App. 4th 819 (2d Dist. 2006)).

[57] *Id.* at 3.

[58] *Id.*

[59] *Id.*

[60] *Id.* (citing Rec. Doc. 116-8).

an implied contract with Omega are not covered by the Policy's definition of loss.[61]  Illinois Union further argues that Blue Cross determined the amounts owed to Omega with reference to contracts with in-network providers even though it considered Omega to be an out of network provider and that these amounts similarly do not constitute loss under the Policy.[62]

Moreover, Illinois Union argues that the amount paid to Omega in the settlement also represents benefits owed under health care plans/contracts with Omega's patients, *i.e.* Blue Cross's members or subscribers.[63]  According to Illinois Union, Blue Cross was required to pay Omega for services provided to patients pursuant to Louisiana's Assignment Statute, which requires an insurance company to reimburse a hospital for services rendered to an individual when that individual's right to the benefits has been assigned to the hospital.[64]  Illinois Union represents that Blue Cross recognized that it had an obligation to its subscribers under the members' contracts to pay benefits to the member for services rendered at a hospital with a valid assignment and that under Louisiana law, it was required to make those payments directly to Omega.[65]  Because, Illinois Union argues, Blue Cross was obligated to pay Omega the correct benefits due under the members' health care plans, the settlement of those payments under a health care plan do not constitute loss, regardless of the theory of liability used to reach those damages.[66]

---

[61]  *Id.* at 10.

[62]  *Id.*

[63]  *Id.*

[64]  *Id.* at 11 (citing La. Rev. Stat. §40:2101).

[65]  *Id.* (citing Rec. Doc. 118-39).

[66]  *Id.* at 12.

### c.    Settlement Allocation

Next, Illinois Union asserts that an insurer must only reimburse an insured to the extent that a settlement compromises claims that are covered by a policy.[67]  According to Illinois Union, Blue Cross's settlement document with Omega allocates a small portion to benefits allegedly owed on behalf of Blue Cross members pursuant to the members' contracts and a much larger portion to damages alleged in tort claims.[68]  According to Illinois Union, this type of "coverage-foreshadowing allocation" in a settlement agreement does not control.[69]

Illinois Union represents that the Fifth Circuit has recognized in *Enserch Corporation v. Shand Morahan & Company* that an insured's allocation in a settlement is "necessarily suspect when insurance indemnification is at issue."[70]  Illinois Union further represents that the Fifth Circuit in *Federal Insurance Company v. New Hampshire Insurance Company* applied Louisiana law to reject a settlement allocation for an underlying claim and that subsequent decisions applying Louisiana law have reached the same conclusion by looking beyond the terms of a settlement agreement in determining allocation between covered and non-covered claims.[71]  According to Illinois Union, the insured bears the burden to prove the amount of its settlement that can be properly allocated to covered claims and damages, and Blue Cross has not met that burden here.[72]

---

[67] *Id.* at 4 (citing *Fed. Ins. Co. v. New Hampshire Ins. Co.*, 439 F. App'x 287, 291 (5th Cir. 2011)).

[68] *Id.* (citing Rec. Doc. 118-26 at 326–327).

[69] *Id.*

[70] *Id.* (citing 952 F.2d 1485, 1495 (5th Cir. 1992)).

[71] *Id.* at 4–5 (citing 439 F. App'x at 291; *Gulf Fleet Marine Ops., Inc. v. Wartsila Power, Inc.*, 797 F.2d 257 (5th Cir. 1986)).

[72] *Id.* at 5 (citing *Cooper Indus., LLC v. Am. Int'l Spec. Lines Ins. Co.*, 273 F. App'x 297, 308 (5th Cir. 2008)).

Illinois Union contends that Blue Cross focuses on Omega's legal theories to establish coverage under the Policy.[73] However, according to Illinois Union, factual allegations that show the origin of damages, rather than legal theories, are determinative of coverage.[74]

Illinois Union next argues that the testimony of one of its employees, Pizzonia, as a fact witness regarding which of Omega's causes of action in the underlying action are covered by the Policy is not proper summary judgment evidence, as the questions posed by Blue Cross's counsel to Pizzonia during his deposition were "vague hypotheticals" that sought "legal conclusions."[75] According to Illinois Union, the entirety of Omega's claims against Blue Cross, even those sounding in tort, do not satisfy the Policy's definition of loss.[76] Illinois Union represents that Blue Cross did not specify what portion of the settlement, if any, is allocated to covered claims.[77] Illinois Union argues that fraud is uninsurable and that while detrimental reliance and Louisiana Unfair Trade Practices Act ("LUTPA") violations could constitute covered causes of action, the damages flowing from those causes of action, rather than the legal theories, control the insurer's indemnity obligations.[78]

Here, Illinois Union argues that Omega's factual allegations in the underlying action raise issues of underpaid amounts or benefits owed under a contract or health plan.[79] Illinois Union

---

[73] *Id.*

[74] *Id.* (citing *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F.Supp.3d 728, 750 (E.D. La. 2014)).

[75] *Id.* at 6.

[76] *Id.*

[77] *Id.*

[78] *Id.* at 6–7.

[79] *Id.* at 7.

notes that Omega's opposition to Blue Cross's motion for summary judgment in the underlying action make references to Omega's contract claims and that Blue Cross's defense counsel also testified that one of Blue Cross's defenses was that it paid the benefits to Omega in accordance with the terms of the underlying contracts.[80] Although Omega allegedly lost profits related to its claim for negligent representation, Illinois Union contends that this allegation was actually made in the context of Omega's claim for underpayment of benefits and that Omega produced no evidence of tort damages resulting in loss of profits.[81] Thus, regardless of the legal theory under which Blue Cross couches Omega's alleged damages, Illinois Union argues that Blue Cross in fact seeks indemnity for underpaid amounts under a contract, which is not covered under the Policy's definition of loss.[82]

Moreover, Illinois Union contends that Blue Cross's reliance on Judge Lemelle's opinion remanding the Omega lawsuit is misguided.[83] Illinois Union represents that Judge Lemelle found in the remand order that Omega was not asserting an ERISA claim and was instead seeking to recover for payments that Blue Cross allegedly promised to pay.[84] Illinois Union represents that Judge Lemelle specifically acknowledged that the Omega action was a rate and fee dispute.[85]

---

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.* (citing Rec. Doc. 116-4 at 6).

[85] *Id.*

According to Illinois Union, the remand order does not assist Blue Cross in establishing loss under the Policy.[86]

### d.    Consent to Settle Clause

Next, Illinois Union argues that Blue Cross settled the Omega claim without Illinois Union's consent, even though, Illinois Union represents, Blue Cross acknowledges that the Policy requires Illinois Union's written consent to settle a claim and does not dispute that consent is a condition precedent to coverage.[87]  Illinois Union contends that Blue Cross's argument that Illinois Union unreasonably withheld its consent to settle is misguided and that the two cases it relies on are distinguishable.[88]  In *In re Spill by the Oil Rig Deepwater Horizon*, Illinois Union argues, the insurer acknowledged that the amount of the insured's unilateral settlement was reasonable and openly waived its right to raise the consent to settle clause in the policy.[89]  Here, Illinois Union avers, it has never acknowledged that Blue Cross's settlement was reasonable, and it expressly objected to the settlement and advised that it was not waiving the consent to settle clause in the Policy.[90]

Illinois Union likewise argues that *Federal Insurance Company v. New Hampshire Insurance Company* is distinguishable, because that case involved a motion to dismiss under Rule 12(b)(6) in which the court found that the facts alleged, if accepted as true, could indicate that the

---

[86] *Id.* at 9.

[87] *Id.*

[88] *Id.*

[89] *Id.* (citing 2014 WL 5524268 (E.D. La. 2014), *aff'd in part sub nom*, *In re Deepwater Horizon*, 807 F.3d 689 (5th Cir. 2015)).

[90] *Id.* at 12–13.

insurer unreasonably delayed settlement where time was of the essence.[91] Here, Illinois Union contends that it was justified in not tendering the Policy limits to settle the case, based on the lack of information provided to Illinois Union and the fact that Blue Cross's in-house counsel advised Illinois Union that a potential trial in the underlying action was "very winnable."[92] Moreover, Illinois Union argues, time was not of the essence in this case where trial was more than a week away following mediation and Blue Cross could have sufficiently involved Illinois Union and explained the potential liability and a reasonable settlement value.[93] Given the information vacuum created by Blue Cross, Illinois Union argues that it was reasonable in withholding consent.[94]

Moreover, Illinois Union contends that its offer at mediation to contribute $500,000 on a cost of defense basis does not constitute consent to settle.[95] Illinois Union argues that such a view would mean that anytime an insurer contributes even a dollar of settlement money for any reason, including cost of defense, it would follow that the insurer consents to the entire settlement up to policy limits.[96]

Illinois Union next argues that it never denied coverage but rather reserved its rights to enforce the consent to settle clause in the Policy.[97] According to Illinois Union, the Fifth Circuit,

---

[91] *Id.* at 13 (citing 2010 WL 28568 (5th Cir. 2010)).

[92] *Id.* at 13–14 (citing Rec. Doc. 118-25).

[93] *Id.* at 14.

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.* at 15.

applying Louisiana law, has held that a consent to settle clause precludes indemnity for an insured's voluntary settlement where an insurer reserves its rights to deny indemnity.[98] Illinois Union contends that the cases on which Blue Cross relies to support its position that Illinois Union effectively denied its claim are distinguishable.[99]

According to Illinois Union, under Louisiana law as applied by the Fifth Circuit, there are only three limited exceptions that allow an insured to settle without the insurer's consent.[100] Illinois Union represents that these exceptions are: (1) when an insurer wrongfully refuses to defend its insured; (2) when an insurer denies coverage where there is coverage; and (3) when an insurer unjustifiably delays settlement.[101] Illinois Union argues that none of these exceptions apply in this case.

First, Illinois Union contends that the first exception does not apply, because under the Policy, Blue Cross, not Illinois Union, has the duty to defend and there is no evidence that Illinois Union instructed Blue Cross not to defend against Omega's claims or failed to reimburse Blue Cross for its defense.[102] Second, Illinois Union avers that the second exception does not apply, because here, the insurer asserts coverage defenses under a reservation of rights and does not deny coverage where there is coverage.[103] Third, Illinois Union contends that it did not unjustifiably

---

[98] *Id.* (citing *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 307 (5th Cir. 2012)).

[99] *Id.* at 16 (citing *Fed. Ins. Co. v. Hawaiian Elec. Indus., Inc.*, 1995 WL 1913089 (D. Hi. 1995)).

[100] *Id.* at 17.

[101] *Id.* at 17–18 (citing *Barnett*, 465 F. App'x at 307).

[102] *Id.* at 17.

[103] *Id.*

delay settlement and thus, the third exception does not apply.[104] Illinois Union avers that it consistently sought information from Blue Cross that would enable it to gauge the availability of coverage for Blue Cross's potential liability in the underlying action but that Blue Cross did not provide such information.[105] According to Illinois Union, prior to mediation, Blue Cross provided a defense memorandum noting that Omega sought $66 million in damages but did not include any information regarding Omega's theories of liability.[106]

According to Illinois Union, the mediation of the underlying action was "unilateral and rushed."[107] Illinois Union asserts that on April 20, 2016, Blue Cross's coverage counsel demanded that Illinois Union attend the mediation and asserted that Omega was seeking damages in the range of $45–$108 million.[108] Illinois Union avers that it informed Blue Cross that it had still not been provided any assessment of the damages allocated among Omega's theories of liability but that it agreed to attend the mediation despite the short notice.[109] Illinois Union represents that it informed Blue Cross at that time that because it could not yet determine which, if any, damages fell within the Policy's coverage, it would act based on information learned at the mediation.[110]

---

[104] *Id.* at 18.

[105] *Id.*

[106] *Id.*

[107] *Id.* at 19.

[108] *Id.* (citing Rec. Doc. 118-32).

[109] *Id.*

[110] *Id.* (citing Rec. Doc. 118-33).

According to Illinois Union, during the mediation, Blue Cross represented that the money it offered for settlement was Blue Cross's own funds.[111] Illinois Union asserts that near the end of the mediation, Blue Cross informed Illinois Union that it had offered Omega significantly more than the Policy limits at which point Illinois Union offered $500,000, *i.e.* the estimated savings in defense costs if the matter was settled.[112] According to Illinois Union, Blue Cross refused this offer, demanded the full Policy limits, and expressly requested that Illinois Union waive the consent to settlement condition in the Policy so that Blue Cross could settle with Omega.[113] Thereafter, Illinois Union asserts that it advised Blue Cross that it would not waive the condition.[114] Thus, Illinois Union argues that the consent to settle provision bars coverage as a matter of law.[115]

### 3. Blue Cross's Reply in Further Support of the Motion for Summary Judgment

In its reply, Blue Cross argues that Illinois Union improperly attempts to broaden the scope of the exclusion in the Policy to exclude coverage for all claims arising out of a contract.[116] According to Blue Cross, the exclusion in the Policy is for "benefits . . . owed . . . under any . . . health care plan," and Illinois Union's attempt to expand the exclusion eviscerates coverage, rendering coverage "illusory."[117] Moreover, Blue Cross contends that it is entitled to rely on the

---

[111] *Id.* at 20 (citing Rec. Doc. 118-34).

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] Rec. Doc. 176 at 3.

[117] *Id.* (citing *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. 07-572, 2014 WL 931781, at *8 (W.D. La. Mar. 10, 2014)).

testimony of Illinois Union's employee, Pizzonia, regarding whether there is coverage for the damages in the underlying action, because Pizzonia's job was to evaluate coverage under the Policy and make a coverage determination.[118]

Next, Blue Cross argues that it is not seeking to recover for amounts paid pursuant to contracts with in-network providers or with its patients.[119] Blue Cross avers that it may use the negotiated amounts it paid to in-network providers as a "yardstick" for determining amounts owed to Blue Cross members.[120] However, according to Blue Cross, the fact that tort damages are calculated by comparison to amounts due under contracts with other entities does not transform those tort damages into amounts it owed to Omega under a contract.[121]

Blue Cross next asserts that Illinois Union simultaneously argues that Blue Cross was required to allocate Omega's claimed damages among the various causes of action in the underlying suit but that Blue Cross's allocation of the damages in the settlement is necessarily suspect.[122] However, Blue Cross argues, Illinois Union cannot have it both ways.[123] According to Blue Cross, Illinois Union's reliance on the Fifth Circuit's opinion in *Enserch Corporation v. Shand Morahan & Company* is misplaced, because the Fifth Circuit in that decision did not broadly condemn settlement allocations or determine that damages are necessarily uncovered by a policy

---

[118] *Id.* at 3–4.

[119] *Id.* at 5.

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.*

where a settlement allocation may be suspect.[124] Rather, according to Blue Cross, the Fifth Circuit held that if a trial court could apportion damages solely by applying the terms of the settlement, then the decision would be one of law and remanded the case to the trial court to determine whether it could allocate covered and uncovered claims as a matter of law or if a jury trial would be required on the issue.[125]

Blue Cross acknowledges that a portion of the damages in the underlying action were owed under its members' health plans and payable by statute to Omega and asserts that it does not seek coverage for those amounts.[126] Moreover, Blue Cross asserts, it does not ask Illinois Union or the Court to rely solely on the terms of the settlement and instead presents the allegations in Omega's petition, the facts uncovered during discovery, and the decisions of the Louisiana state court and Eastern District of Louisiana in the underlying action to support its request for coverage.[127]

Finally, according to Blue Cross, Illinois Union could have participated in the drafting of the settlement agreement, but Illinois Union's representatives decided to leave the mediation before the terms of the settlement were complete.[128] Blue Cross further avers that Illinois Union has never questioned the reasonableness of the settlement or asserted that Blue Cross should not have settled the underlying action.[129] Blue Cross contends that Illinois Union should not be

---

[124] *Id.* at 5–6 (citing 952 F.2d 1485, 1495 (5th Cir. 1992)).

[125] *Id.* at 6.

[126] *Id.*

[127] *Id.*

[128] *Id.* at 7 (citing O'Brien Dep. Tr.).

[129] *Id.*

permitted to contest the terms of the settlement and simultaneously shirk its obligation to participate in the mediation.[130]

## B. *Illinois Union's Motion for Summary Judgment on Coverage Obligations*

In its motion for summary judgment, Illinois Union seeks summary judgment in its favor on: (1) Count I of its Complaint, which seeks a declaratory judgment that Illinois Union is not required to indemnify Blue Cross for the underlying settlement due to the fact that Blue Cross did not obtain Illinois Union's consent; and (2) Count II of its Complaint, which seeks a declaratory judgment that Illinois Union has no obligation to indemnify Blue Cross due to the fact that the settlement encompasses damages that are not covered under the Policy.[131] Additionally, Illinois Union requests that the Court dismiss with prejudice Blue Cross's counterclaims related to coverage.[132]

### 1. **Illinois Union's Arguments in Support of the Motion for Summary Judgment**

#### a. *The Policy's Consent to Settle Clause*

In its motion for summary judgment, Illinois Union first argues that Blue Cross lacked the required prior written consent to settle.[133] According to Illinois Union, the Policy provides that an insured may not settle or offer to settle any claim without the insurer's prior written consent.[134] Illinois Union contends that an insurer must show prejudice in order to avoid coverage due to an

---

[130] *Id.*

[131] Rec. Doc. 118 at 1.

[132] *Id.*

[133] Rec. Doc. 118-1 at 6.

[134] *Id.* (citing 118-5).

insured's breach of a policy condition unless the condition qualifies as a condition precedent.[135] Moreover, Illinois Union argues, it suffered prejudice as a matter of law, because the Fifth Circuit has held that an insurer suffers prejudice as a matter of law when an insured unilaterally settles a claim.[136] According to Illinois Union, Blue Cross failed to provide it with necessary information to determine the supporting coverage of the underlying liability and damages in the underlying suit, and Illinois Union expressly denied Blue Cross's request to waive the consent to settlement condition.[137]

### b. The Policy's Cooperation Clause

Illinois Union next argues that Blue Cross failed to comply with the cooperation clause in the Policy, which requires the insured to provide Illinois Union "with all information, assistance, and cooperation" that it reasonably requests.[138] According to Illinois Union, in order to prove a breach of a cooperation clause under Louisiana law, an insurer must show: (1) a diligent effort to obtain the necessary information; and (2) actual prejudice.[139] Here, Illinois Union asserts, it made a diligent effort to obtain the necessary information, as evidenced by its repeated requests to Blue Cross, and it suffered prejudice when it lacked the information necessary to make an informed decision to settle before Blue Cross did so unilaterally.[140]

---

[135] *Id.*

[136] *Id.* at 6–7 (citing *Danrik Const., Inc. v. Am. Cas. Co.*, 314 F. App'x 720 (5th Cir. 2009)).

[137] *Id.* at 7.

[138] *Id.* at 7–8 (citing Rec. Doc. 118-5).

[139] *Id.* at 8 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 68 F.3d 905, 912 (5th Cir. 1995); *Johnson v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 2156328, at *9 (E.D. La. 2013)).

[140] *Id.*

### c. *The Policy's Definition of Loss*

Next, Illinois Union argues that Blue Cross has not suffered "loss" as defined in the Policy, and thus, there is no coverage under the Policy.[141] According to Illinois Union, loss includes amounts Blue Cross is legally obligated to pay for errors in handling claims.[142] However, Illinois Union asserts, loss does not include amounts or benefits "owed under any contract with any party" or "any health care plan," "equitable relief or redress in any form," and "matters which are uninsurable under the law."[143] According to Illinois Union, "the gravamen of the Omega Lawsuit" was Blue Cross's failure to pay amounts due under its subscribers'/members' contracts, which had been assigned to Omega.[144]

Illinois Union asserts that Blue Cross bears the initial burden of proving satisfaction of the loss definition in the Policy.[145] Illinois Union represents that the causes of action pleaded against Blue Cross in the underlying action are: (1) violation of LUTPA; (2) fraud; (3) negligent misrepresentation; (4) detrimental reliance; and (5) alternatively, unjust enrichment.[146] First, Illinois Union argues that fraud falls directly within one of the Policy's carve outs from loss and is thus not covered by the Policy.[147] Second, Illinois Union contends that detrimental reliance and unjust enrichment do not qualify as loss, because they are based on equitable principles under

---

[141] *Id.*

[142] *Id.* at 9.

[143] *Id.* (citing Rec. Doc. 118-5).

[144] *Id.*

[145] *Id.* at 10.

[146] *Id.* (citing Rec. Doc. 1-2).

[147] *Id.*

Louisiana law and the Policy's definition of loss carves out "equitable relief or redress in any form."[148] Additionally, Illinois Union contends that unjust enrichment and detrimental reliance are quasi-contractual and that the Policy does not include contractual obligations.[149]

Next, Illinois Union argues that even if the remaining causes of action in the underlying lawsuit, *i.e.* claims for violation of LUTPA and negligent misrepresentation, are potentially covered by the Policy, legal theories do not control an insurer's indemnity obligation.[150] Here, Illinois Union argues, regardless of the legal theory of recovery, the facts demonstrate that Blue Cross in fact seeks indemnity for underpaid amounts owed under contracts/health care plans, and amounts owed under any contract/health care plan are carved out from coverage.[151]

According to Illinois Union, Omega argued throughout the underlying suit that Blue Cross was obligated to reimburse Omega for the underpayment of benefits based on an implied contract and Blue Cross admits that it had an obligation to pay Omega.[152] Illinois Union argues that the Policy's carve out for amounts owed under a contract includes amounts owed under an implied contract.[153] Illinois Union further argues that Blue Cross determined the amounts owed to Omega with reference to a contract with its in-network providers.[154] Moreover, Illinois Union contends, the amount Blue Cross paid to Omega represents benefits owed under health care plans/contracts

---

[148] *Id.* (citing *Patriot Const. & Equip. v. Rage Logistics, LLC*, 2016 WL 1358526 (La. App. 3d 2016).

[149] *Id.* at 11.

[150] *Id.*

[151] *Id.* at 12.

[152] *Id.*

[153] *Id.*

[154] *Id.* at 13.

with Omega's patients, *i.e.* Blue Cross's members.[155] According to Illinois Union, Blue Cross maintains that it was obligated to pay Omega for services rendered to patients pursuant to Louisiana's Assignment Statute.[156] Because, Illinois Union argues, Blue Cross was obligated to pay Omega the correct benefits due under the members' health care plans, Blue Cross's payment to settle Omega's claim of insufficient reimbursement was an amount owed under a health care plan and is carved out of the Policy's definition of loss, no matter the theory of liability used to reach those damages.[157]

Illinois Union asserts that case law interpreting similar policy language has held that insurers are not obligated to reimburse for amounts due under a contract with a medical provider and that no case has found that underpayment of benefits by a health care insurer qualifies as loss.[158] Specifically, Illinois Union points to a Minnesota appellate court's decision that it represents held that an insurer was not obligated to cover losses in connection with an underlying breach of contract claim against it.[159] Illinois Union also points to a decision from a California appellate court in which it represents that the court held that a professional liability insurer was not obligated to indemnify the insured health insurance company for settlement of claims filed by healthcare providers alleging underpaid benefits.[160]

---

[155] *Id.*

[156] *Id.* at 14 (citing La. Rev. Stat. § 40: 2101).

[157] *Id.*

[158] *Id.* at 15.

[159] *Id.* (citing *Union Fire Ins. Co. v. Hosp. Affiliates Mgmt. Corp.*, 363 N.W.2d 494 (Minn. App. 1985)).

[160] *Id.* at 15–16 (citing *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232 (2d Dist. 2012)).

#### d. Settlement Allocation

Next, Illinois Union argues, as it did in opposition to Blue Cross's motion for summary judgment, that the settlement allocation is not determinative and that an insurer must reimburse an insured only to the extent that a settlement compromises claims covered by the policy. [161] According to Illinois Union, the settlement agreement in the underlying action allocates certain sums for the settlement of benefits allegedly owed on behalf of Blue Cross members and certain sums for the damages alleged in the tort claims. [162] According to Illinois Union, Omega provided no evidence of tort damages in the underlying action and Blue Cross represented that it did not have any documents related to Omega's tort claims. [163] Thus, Illinois Union argues, Omega's damages cannot be characterized as lost profits, and the only damages settled were for benefits owed under a contract/health care plan, which are carved out of the Policy's definition of loss and not covered by the Policy. [164]

#### e. Defense Costs & Attorneys' Fees

Finally, Illinois Union argues that it is entitled to summary judgment on Blue Cross's counterclaim that Illinois Union failed to pay certain defense costs. [165] According to Illinois Union, there is no evidence that it failed to reimburse Blue Cross for any of its defense costs. [166] Illinois

---

[161] *Id.* at 17.

[162] *Id.* (citing Exh. 22).

[163] *Id.*

[164] *Id.* at 19.

[165] *Id.* (citing Rec. Doc. 11).

[166] *Id.*

Union also argues that Blue Cross is not entitled to attorneys' fees, because attorneys' fees are only recoverable when authorized by statute or contract, neither of which are present here.[167]

### 2. Blue Cross's Arguments in Opposition to the Motion for Summary Judgment

#### a. The Policy's Consent to Settle Clause

In its opposition to Illinois Union's motion for summary judgment, Blue Cross argues, as it did in its motion for summary judgment, that Illinois Union cannot raise lack of consent as a coverage defense, because it unreasonably withheld its consent for Blue Cross to settle.[168] Blue Cross contends that given the potential liability it faced, Illinois Union's refusal to consent in writing to the settlement was unreasonable and left Blue Cross free to settle the case.[169] Moreover, Blue Cross avers that Illinois Union verbally consented to the agreement by agreeing to pay a portion of the settlement.[170] Blue Cross represents that Illinois Union's representative at the mediation, Pizzonia, testified that he often gives verbal approval of settlement at the time of mediation and that verbal approval is sufficient to comply with the consent to settle provision of the Policy.[171] Moreover, Blue Cross argues, Illinois Union told Blue Cross that there was no coverage for the underlying action, which constituted a denial of coverage and relieved Blue Cross of any need to obtain consent before settling.[172] According to Blue Cross, where an insurer

---

[167] *Id.* (citing *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 201 (La. 2008)).

[168] Rec. Doc. 146 at 4.

[169] *Id.* at 5.

[170] *Id.* at 6.

[171] *Id.*

[172] *Id.* at 7–8 (citing *Fed. Ins. Co. v. Hawaiian Elec. Indus., Inc.*, 1995 WL 1913089 (D. Haw. Dec. 15, 1995)).

wrongfully denies coverage, the insured is reasonable in believing that it could suffer an adverse judgment at trial, and there is no evidence that the insured improperly entered into the settlement agreement, an insured is entitled to settle.[173]

### b. The Policy's Cooperation Clause

Next, Blue Cross argues that it complied with the Policy's cooperation clause.[174] Moreover, according to Blue Cross, Illinois Union must demonstrate that an alleged breach of the cooperation clause was both material and prejudicial in order to avoid its coverage obligations.[175] Blue Cross avers that the determination of whether a breach was material and prejudicial is highly fact specific and that a court in the Eastern District of Louisiana has determined that it is doubtful that summary judgment is ever appropriate on an insured's alleged failure to cooperate.[176] Blue Cross asserts that it provided Illinois Union regular status updates and had teleconferences with Blue Cross to discuss the status of the Omega Hospital claim.[177] Moreover, Blue Cross argues, it risked waiving the attorney-client privilege by revealing defense counsel's liability and damages analysis.[178] Therefore, Blue Cross argues, Illinois Union cannot demonstrate that it was prejudiced by Blue Cross's refusal to provide defense counsel's damages and liability evaluations.[179] Even if Illinois Union was entitled to privileged defense counsel analyses, Blue Cross avers, defense

---

[173] *Id.* at 7 (citing *Singleton v. United Tugs, Inc.*, 97-1652 (La. App. 4 Cir. 3/18/98), 710 So.2d 347, 352).

[174] *Id.* at 8.

[175] *Id.*

[176] *Id.* (citing *Kovesdi v. Allstate Indem. Co.*, 2010 WL 3835893, at *6 (E.D. La. Sept. 24, 2010)).

[177] *Id.* at 9–10.

[178] *Id.* at 11–12.

[179] *Id.* at 11.

counsel in the underlying action had not created any such analyses that would have been responsive to Illinois Union's requests.[180] Blue Cross further argues that Illinois Union failed to engage in any independent investigation of the underlying action and cannot now assert prejudice from a lack of information.[181]

### c. *Exclusionary Language in the Policy*

Next, Blue Cross asserts that the rule requiring exclusionary language to be narrowly construed applies with equal force to carve outs in the definition of loss, even if such carve outs are not in the exclusions section of a policy.[182] According to Blue Cross, Illinois Union has failed to meet its burden of demonstrating that Blue Cross's coverage claims are excluded by the terms of the Policy.[183] First, Blue Cross argues that Illinois Union's assertion that fraud claims are uninsurable under Louisiana law is not true.[184] Under the terms of the Policy, Blue Cross argues, Illinois Union is only relieved of its obligation to pay loss brought about by fraudulent conduct if that conduct is established through an admission or by other final adjudications.[185] Moreover, Blue Cross represents that Illinois Union's employee testified that Illinois Union cannot apply the fraud exclusion where a policyholder has not admitted an intentional act and the case is settled.[186]

As to loss resulting from Omega's claims for negligent misrepresentation and violation of

---

[180] *Id.* at 12.

[181] *Id.* at 13.

[182] *Id.* at 14 (citing *MBIA, Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 166 (2d Cir. 2011)).

[183] *Id.* at 15.

[184] *Id.*

[185] *Id.* (citing Exh. B).

[186] *Id.*

the Unfair Trade Practices Act, Blue Cross argues that Illinois Union must provide coverage, because such claims do not arise out of Blue Cross's contractual obligation to reimburse Omega for services and instead arise out of a more general obligation related to "industry practice."[187] According to Blue Cross, these allegations in the underlying suit are not contractual in nature and therefore, Illinois Union's reliance on cases holding that insurers are not obligated to reimburse for amounts due under a contract are irrelevant.[188] Blue Cross also represents that in remanding the underlying action to state court, the Eastern District of Louisiana found that Omega's claims did not arise out of patients' rights to benefits.[189]

Blue Cross contends that in cases like this one where an underlying complaint alleges claims premised on a violation of a statutory right, the exclusion for amounts due under a contract does not bar coverage.[190] Specifically, Blue Cross points to a Pennsylvania superior court case in which the court found that damages resulting from allegations of Racketeer Influences and Corrupt Organization Act ("RICO") violations were covered under a policy, because they constituted allegations of wrongful acts committed in the performance of professional service related to the operation of a managed care organization.[191] Here, as in that case, Blue Cross argues that Illinois Union's reading of the contract exclusion would render coverage illusory because it would nearly always bar coverage for claims arising out of Blue Cross's duty to provide managed care

---

[187] *Id.* at 16–17.

[188] *Id.* at 17.

[189] *Id.*

[190] *Id.* at 18 (citing *Exec. Risk Indem., Inc. v. CIGNA Corp.*, 976 A.2d 1170 (Pa. Super. Ct. 2009)).

[191] *Id.* at 18–19 (citing *CIGNA Corp.*, 976 A.2d at 1173).

services.[192]

### d. Attorneys' Fees

Finally, Blue Cross argues that it is entitled to attorneys' fees, because Louisiana courts have recognized an insured's entitlement to attorneys' fees where the insurer has been guilty of bad faith toward the insured and the insured has to employ an attorney to protect its interests.[193] Here, Blue Cross argues that it is entitled to an award of attorneys' fees based on Illinois Union's bad faith conduct.[194]

### 3. Illinois Union's Reply in Further Support of the Motion for Summary Judgment

In reply, Illinois Union first argues that its reservations of rights do not constitute denials of coverage and did not waive Blue Cross's obligation to obtain consent to settle.[195] Illinois Union further argues that Blue Cross improperly cites to the report of its expert and a sentence in a discovery order stating that Illinois Union told Blue Cross that many of the claims were not covered to attempt to show that Illinois Union denied coverage in this case.[196] Whether a denial occurred, Illinois Union argues, is a question of law for this Court and neither the expert report nor a discovery order constitute proper summary judgment evidence.[197]

Next, Illinois Union contends that Blue Cross breached the duty to cooperate causing

---

[192] *Id.* at 19.

[193] *Id.* at 20 (citing *Md. Cas. Co. v. Dixie Ins. Co.*, 622 So.2d 698, 703 (La. App. 1st Cir. 1993), *writ denied*, 629 So.2d 1138 (La. 1993)).

[194] *Id.*

[195] Rec. Doc. 172 at 1.

[196] *Id.* at 1–2 (citing Rec. Doc. 131).

[197] *Id.* at 2.

prejudice to Illinois Union.[198] Illinois Union asserts that it never sought privileged information from defense counsel but rather sought facts from its insured in order to understand the underlying action.[199] Moreover, Illinois Union avers that Blue Cross did not provide regular or material updates and in fact provided just sixteen updates over the course of six years of litigation.[200] Illinois Union contends that it realistically could not have conducted an effective independent investigation and that the information it sought could not be found on the state court's docket.[201] For example, Illinois Union avers that it would have been useful to see the settlement brochure setting forth Omega's theory of the case and outlined damages, but Blue Cross has yet to provide this.[202]

Next, Illinois Union argues that Blue Cross cannot show any damages ensued from tort theories in the underlying suit.[203] Illinois Union argues that Blue Cross allocated 90% of its settlement to damages arising from Omega's tort claims, even though there is no evidence of damages arising from tortious conduct.[204] Rather, Illinois Union maintains that Blue Cross understood that the focus of Omega's case was Omega's breach of contract claims and Blue Cross's underpayment of benefits for medical services and supplies, which is why it focused its

---

[198] *Id.*

[199] *Id.* at 3.

[200] *Id.*

[201] *Id.* at 4.

[202] *Id.* (citing Rec. Doc. 117-5).

[203] *Id.* at 5.

[204] *Id.* at 6.

defense on those issues.[205]

Illinois Union next contends that the damages in the settlement are benefits owed under a contract or health care plan and are therefore not covered under the Policy.[206] According to Illinois Union, the cases cited by Blue Cross to support its argument that the exclusion for amounts due under a contract does not apply where claims are based upon a violation of a statutory right do not apply here, because those cases involved exclusions that were found to be ambiguous.[207]

Next, Illinois Union argues that the fraud exception applies to exclude coverage in this case.[208] According to Illinois Union, the fraud exclusion requires some determination of fraud, either through admission or a final adjudication in a proceeding constituting the claim or "in a proceeding separate from or collateral to any proceeding constituting the claim."[209] Thus, Illinois Union argues, this coverage action qualifies as a separate proceeding and fraud can be established and excluded here.[210]

Finally, Illinois Union argues that Blue Cross's bad faith cause of action under Louisiana Revised Statute § 22: 1973 does not provide for attorneys' fees.[211]

---

[205] *Id.*

[206] *Id.* at 7.

[207] *Id.* The Court notes that Illinois Union also argues that Blue Cross cites to and attaches a case that cannot be considered as precedent under Pennsylvania superior court rules and requests that it and the portions of Blue Cross's memorandum that quote the case be stricken from the record. Because the Court does not rely on the unpublished Pennsylvania case in its analysis, Illinois Union's request that the case be stricken is denied as moot.

[208] *Id.* at 9.

[209] *Id.* (citing Rec. Doc. 118-5).

[210] *Id.*

[211] Rec. Doc. 172 at 9.

**4.      Illinois Union's Sur-Reply in Further Support of the Motion**

In further support of its motion for summary judgment, Illinois Union contends that Blue Cross made "multiple settlement offers" to Omega without Illinois Union's knowledge or written consent.[212] According to Illinois Union, Blue Cross stipulated in the deposition of its corporate representative, Charles O'Brien, that O'Brien's responses to the questions in the previous fact deposition would be binding on Blue Cross.[213] Illinois Union represents that O'Brien testified in the fact deposition and in his deposition as a corporate representative that Blue Cross made at least one settlement offer to Omega prior to the mediation without notifying Illinois Union or receiving written consent.[214] Illinois Union further argues that Blue Cross did not seek Illinois Union's consent before making an offer to settle at the mediation.[215] Because, Illinois Union argues, under the Policy, Blue Cross must obtain written consent before making an offer to settle, Blue Cross violated the Policy and Illinois Union is not liable for any amounts voluntarily settled or any amounts offered to settle the underlying action.[216] Thus, according to Illinois Union, the consent to settle provision precludes coverage for the settlement in the underlying action.[217]

## III. Law and Analysis

*A.*      *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits

---

[212] Rec. Doc. 223-3 at 2.

[213] *Id.*

[214] *Id.*

[215] *Id.*

[216] *Id.* at 3.

[217] *Id.* at 1.

show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[218] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[219] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[220] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[221] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[222]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[223] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence

---

[218] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[219] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[220] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[221] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[222] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[223] *Celotex*, 477 U.S. at 323.

supports his claims.[224] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[225] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[226] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[227]

### B. Legal Standard for Interpreting Insurance Contracts under Louisiana Law

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[228] "The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract' by construing words and phrases 'using their plain, ordinary and generally prevailing meaning.'"[229] "Interpretation of an

---

[224] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[225] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[226] *Little*, 37 F.3d at 1075.

[227] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[228] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)); *Mark v. Sunshine Plaza, Inc.*, No. 16-455, 2016 WL 6876645, at *2 (E.D. La. Nov. 22, 2016) (Morgan, J.) (quoting *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (quoting *Mayo v. State farm Mut. Auto. Ins. Co.*, 2003-1801, at 3 (La. 2/25/04); 869 So.2d 96, 99)) (quotation marks omitted) (alterations omitted).

[229] *Wisznia Co.*, 759 F.3d at 448–49 (quoting *Mayo,* 2003–1801, at 3 (La.2/25/04); 869 So.2d at 99 (citing La. Civ. Code arts. 2045, 2047)).

insurance contract generally involves a question of law."[230]

If the contract is clear and unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[231] If the insurance policy contains ambiguous provisions, the "[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."[232] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[233] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[234]

## C.    *Analysis*

In its motion for summary judgment on coverage obligations, Blue Cross argues: (1) that the damages settled in the underlying action are included in the Policy's definition of loss; (2) that the Policy's consent to settle clause does not bar coverage; and (3) that Illinois Union breached a contract with Blue Cross.[235] Therefore, Blue Cross asserts that the Court should grant summary judgment in Blue Cross's favor on: (1) Count I of Illinois Union's Complaint, which seeks a

---

[230] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910 (La. 2006)).

[231] *Prejean v. Guillory*, 2010-0740, at 6 (La. 7/2/10); 38 So. 3d 274, 279; *see also Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, J.)).

[232] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 207 (quoting *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)).

[233] *Id.* at 208 (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)).

[234] *Id.*

[235] Rec. Doc. 116.

declaratory judgment that Illinois Union is not required to indemnify Blue Cross for the underlying settlement due to the fact that Blue Cross did not obtain Illinois Union's consent; (2) Count II of Illinois Union's Complaint, which seeks a declaratory judgment that Illinois Union has no obligation to indemnify Blue Cross due to the fact that the settlement encompasses damages that are not covered under the Policy; (3) Count I of Blue Cross's counterclaim for a declaratory judgment that Illinois Union must indemnify Blue Cross for the settlement in the underlying action; and (4) Count II of Blue Cross's counterclaim for breach of contract as a result of Illinois Union's failure to indemnify Blue Cross for the settlement in the underlying action.[236]

Similarly, in its motion for summary judgment on coverage obligations, Illinois Union argues that: (1) that the damages settled in the underlying action are not included in the Policy's definition of loss; (2) the Policy's consent to settle clause bars coverage; (3) that the Policy's cooperation clause bars coverage; and (4) that Blue Cross is not entitled to defense costs or attorneys' fees.[237] Thus, Illinois Union seeks summary judgment in its favor on: (1) Count I of its Complaint, which seeks a declaratory judgment that Illinois Union is not required to indemnify Blue Cross for the underlying settlement due to the fact that Blue Cross did not obtain Illinois Union's consent; (2) Count II of its Complaint, which seeks a declaratory judgment that Illinois Union has no obligation to indemnify Blue Cross due to the fact that the settlement encompasses damages that are not covered under the Policy.[238] Additionally, Illinois Union requests that the

---

[236] Rec. Doc. 116-1 at 17.

[237] Rec. Doc. 118 at 1.

[238] *Id.*

Court dismiss with prejudice Blue Cross's counterclaims related to coverage and defense costs and attorneys' fees.[239]

Because the parties' motions for summary judgment substantially overlap, the Court will address the parties' arguments together in turn.

### 1. Blue Cross's Damages in the Underlying Action and the Policy's Definition of Loss

In both motions for summary judgment, Blue Cross and Illinois Union each assert they are entitled to summary judgment on the issue of whether Blue Cross's settlement constitutes a covered loss under the Policy. In its motion for summary judgment, Blue Cross argues that the damages resulting from the tort-based causes of action in the underlying lawsuit are covered under the Policy's definition of loss and are not excluded by the carve-out for benefits owed under any contract.[240] Thus, Blue Cross avers, Illinois Union is obligated to indemnify Blue Cross for the settlement in the underlying action with respect to the covered loss and has breached its contractual obligation to Blue Cross by failing to do so.[241] In its motion for summary judgment, Illinois Union contends that Blue Cross's damages in the underlying action are not covered by the Policy's definition of loss, because they fall within the Policy's carve-outs.[242] Therefore, Illinois Union avers that it is not required to indemnify Blue Cross for the settlement in the underlying action.[243] The Court will address each of the parties' arguments in turn.

---

[239] *Id.*

[240] Rec. Doc. 116-1 at 10.

[241] *Id.* at 10, 16.

[242] Rec. Doc. 118-1 at 9, 11.

[243] *Id.* at 20.

As noted *supra*, under Louisiana law, "an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[244] With respect to coverage, the insured bears the burden of proving that the incident giving rise to a claim falls within a policy's terms.[245] However, "the insurer bears the burden of proving the applicability of an exclusionary clause within the policy."[246] Exclusionary provisions must be read together with the entire policy and are construed strictly against the insurer and in favor of coverage.[247] Moreover, "[a]ny ambiguities within an exclusionary provision or the policy as a whole must be construed against the insurer and in favor of coverage."[248] In other words, "if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied."[249] Thus, "[a] summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, exists under which coverage could be afforded."[250]

---

[244] *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–18 (5th Cir. 2005) (internal citation omitted); *see also N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 2005-0081 (La. App. 1 Cir. 8/23/06), 943 So. 2d 429, 443, *writ denied*, 2006-2918 (La. 2/16/07), 949 So. 2d 423, and *writ denied*, 2006-2803 (La. 2/16/07), 949 So. 2d 424 ("An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts.").

[245] *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000). *See also Coleman*, 418 F.3d at 517.

[246] *Doerr*, 774 So.2d at 124.

[247] *See id. See also Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La. 1991).

[248] *Coleman*, 418 F.3d at 517 (internal citations omitted).

[249] *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180 (La. App. 4 Cir. 4/11/94) (citing *Garcia*, 579 So.2d 975, 976 (La. 1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989)).

[250] *Widder v. La. Citizens Prop. Ins. Corp.*, 2011-0196 (La. App. 4 Cir. 8/10/11), 82 So.3d 294, 296 (internal citation omitted).

The Court notes that Illinois Union argues that Blue Cross, as the insured, bears the burden of demonstrating that the carve outs in the Policy's definition of loss do not apply.[251] However, this contradicts Louisiana courts' well established rule that the insurer bears the burden of showing the applicability of "an exclusionary clause within a policy."[252] Moreover, the case cited by Illinois Union for the proposition that Blue Cross must bear the burden of demonstrating the applicability of the carve outs, *Fielding v. Casualty Reciprocal Exchange*, is readily distinguishable.[253] In that case, the Louisiana Third Circuit Court of Appeal held that it was the insured's burden to demonstrate that an automobile at issue was a "temporary substitute automobile," which was defined in the policy as an "automobile not owned by the named insured . . ."[254] There was no separate exclusion at issue.[255] By contrast, in the Policy at issue, "loss" is first defined affirmatively.[256] It is then followed by a list of four exclusions or "carve outs."[257] Because these carve outs are exclusionary clauses within a Policy, Illinois Union bears the burden of demonstrating their applicability to the damages at issue.[258]

Here, the Policy defines "loss" as "Defense Expenses and any monetary amount that an

---

[251] Rec. Doc. 147 at 2.

[252] *See Jones v. Estate of Santiago*, 2003-1424 (La. 4/14/04), 870 So. 2d 1002, 1010.

[253] 331 So. 2d 186, 188 (La. Ct. App. 1976).

[254] *Fielding*, 331 So. 2d at 188.

[255] *Id.*

[256] Rec. Doc. 118-5 at 9.

[257] *Id.* at 10. ("Loss shall not include . . . .")

[258] *Jones* 870 So. 2d at 1010.

Insured is legally obligated to pay as a result of a Claim . . . ."[259] The Policy defines a "claim" as "any written notice received by an Insured that a person or entity intends to hold any Insured responsible for a Wrongful Act" committed during the covered Policy period.[260] A "wrongful act" is in turn defined in relevant part as "any actual or alleged act, error or omission in the performance of, or failure to perform Managed Care Professional Services by an Insured Entity or any Insured Person acting within the scope of his or her duties or capacity as such . . . ."[261] The Policy states in relevant part that loss "shall not include" the following: (1) "fees, amounts, limits, benefits, obligations or coverages owed under any contract with any party (including providers of Medical Services, health care plan or trust, insurance or workers compensation policy or plan or program of self insurance;" (2) "non-monetary or equitable relief or redress in any form, including . . . the restitution or disgorgement of funds, and the cost of complying with any injunctive, declaratory or administrative relief;" and (3) "matters which are uninsurable under the law pursuant to which this Policy is construed," *i.e.* Louisiana law.[262]

As an initial matter, the Court notes that Blue Cross specifically acknowledges that a portion of the damages in the underlying action were "owed under its members' health plans and payable, by statute, to Omega Hospital."[263] Moreover, Blue Cross specifically asserts that it does not seek coverage for those amounts and thus does not seek to recover the entire balance of the

---

[259] Rec. Doc. 118-5 at 9.

[260] *Id.* at 8.

[261] *Id.* at 11.

[262] *Id.* at 10.

[263] Rec. Doc. 176 at 6.

settlement, but instead only seeks to recover the portion of the settlement covered under the Policy.[264] Blue Cross argues that it is entitled to summary judgment on Illinois Union's claims for declaratory relief, as well as Blue Cross's claims for declaratory relief and breach of contract, because Blue Cross asserts that the damages it does seek clearly fall within the Policy's definition of loss.[265] In support of its motion, Blue Cross points to Omega Hospital's petition in the underlying action, which alleged that Blue Cross "improperly and systematically" reduced the amount of its reimbursement to Omega Hospital for medical services and supplies.[266] Blue Cross further notes that Omega Hospital asserted tort-based causes of action, including negligent misrepresentation and detrimental reliance, and that the damages flowing from those causes of action are covered under the Policy's definition of loss and are not excluded by the carve-out for benefits owed under any contract.[267] Blue Cross notes that Omega Hospital acknowledged that it did not have a contract with Blue Cross and that the state court in the underlying action recognized that some of the claims against Blue Cross sounded in tort.[268] Blue Cross also points to a decision by another section of the Eastern District of Louisiana remanding Omega's original action against Blue Cross to state court and finding that Omega's claims did not constitute benefits due under an ERISA health plan but arose from representations made by Blue Cross's web portal and not from patients' rights under an ERISA plan.[269]

---

[264] *Id.*

[265] Rec. Doc. 116-1 at 8.

[266] *Id.* at 10 (citing Rec. Doc. 1-2 at 3).

[267] *Id.* (citing Rec. Doc.1-2 at 9–11).

[268] *Id.* (citing Rec. Doc. 116-8 at 38).

[269] *Id.* at 11 (citing Rec. Doc. 116-4 at 8).

Further, Blue Cross points to the testimony of Illinois Union's head of medical risk claims department, Pizzonia, in which he acknowledged that damages awarded under LUTPA, fraud, negligent misrepresentation, and detrimental reliance are separate and apart from benefits owed under a contract.[270] Finally, Blue Cross points to the declaration of its litigation counsel in the underlying action in which he asserts that Blue Cross calculated the amount of the shortfall in payments owed to Omega and that the value of those calculations is itemized in the written settlement.[271] The declaration also asserts that Blue Cross does not seek coverage for that portion of the settlement.[272] Blue Cross's litigation counsel also testified in his deposition that approximately 10% of the settlement was allocated to damages due to Omega under Blue Cross's members' plans and approximately 90% was allocated to Omega's tort claims.[273]

---

[270] *Id.* (citing Rec. Doc. 116-7 at 5–9). The Court notes that Illinois Union argues that Pizzonia's testimony regarding coverage for Omega's cause of action is "not proper summary judgment evidence." Rec. Doc. 147 at 6. However, on summary judgment, pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), a party asserting a fact cannot be or is genuinely disputed must support the fact by "citing to particular parts of materials in the record, including depositions . . . ." Illinois Union argues that the questions posed to Pizzonia were "vague" but does not point to any authority for its proposition that Pizzonia's deposition testimony regarding Omega's causes of action should not be considered on summary judgment. Even if Pizzonia's deposition testimony were improper, the Court finds that Blue Cross has nevertheless pointed to sufficient evidence to raise a genuine dispute of material fact as to Illinois Union's coverage obligations over the underlying settlement.

[271] Rec. Doc. 158-2 at 1–2.

[272] *Id.* at 2. The Court notes Illinois Union's arguments that the settlement allocation in the underlying action is "inherently suspect." However, in the case cited for that proposition, *Enserch Corp. v. Shand Morahan & Co., Inc.*, the Fifth Circuit, applying Texas law, merely disapproved of the trial court's instruction to the jury denying any apportionment of the indemnification between settlement damages that were for covered damages and those that were for non-covered damages under the insurance policy at issue. The Fifth Circuit also held that a trial court may look beyond the settlement agreement itself to determine the allocation of damages if it was not clear form the complaint and the insurance contract which of the settled claims were covered and which were not. 952 F.3d 1485, 1495 (5th Cir. 1992). *Enserch* does not stand for the proposition that evidence of the settlement allocation should be disregarded or discounted on summary judgment. While an insured's settlement allocation in an underlying action is not automatically suspect, neither is it automatically determinative of the insurer's coverage obligation. *See Fed. Ins. Co.*, 439 F. App'x at 291 (applying Louisiana law and finding that an entire settlement was covered by a policy, despite the fact that a portion of the settlement was characterized as payment for a claim that would not have been covered by the policy).

[273] Rec. Doc. 118-26 at 326–327.

By contrast, Illinois Union points to Omega's opposition to Blue Cross's summary judgment motion in the underlying action, which it asserts made repeated reference to Omega's contract claims.[274] Illinois Union also points to the testimony of Blue Cross's defense counsel in the underlying action in which he stated that one of Blue Cross's defense prongs was that Blue Cross paid benefits in accordance with the terms and conditions of the underlying subscriber contracts.[275] Illinois Union further notes that Omega only alleged lost profits once in its petition, that Omega provided no evidence of tort damages resulting in a loss of profits or business opportunity, and that Blue Cross has not produced any documents regarding Omega's lost profits and loss of business opportunities.[276] Illinois Union also points to Blue Cross's acknowledgement that it was obligated to pay Omega the correct benefits due under the members' health care plans.[277]

Finally, Illinois Union notes that the settlement in the underlying action allocates a small portion to benefits allegedly owed on behalf of Blue Cross members and a much larger portion to damages alleged in the tort claims and argues that this allocation is "suspect" and crafted "for the purpose of effectuating coverage."[278] Illinois Union points to the testimony of Blue Cross's defense counsel in the underlying action in which he stated that Omega was not concerned "with exactly what the legal theory of recovery was" and that Omega had "no evidence" of its allegations

---

[274] Rec. Doc. 147 at 7 (citing Rec. Doc. 116-8; Rec. Doc. 147-5).

[275] *Id.* (citing Rec. Doc. 147-6 at 18).

[276] *Id.* (citing Rec. Doc. 1-2 at 59).

[277] *Id.* at 12 (Rec. Doc. 118-39).

[278] *Id.* at 4 (citing Rec. Doc. 118-26 at 326–27).

that Blue Cross was attempting to put Omega out of business.[279]  Illinois Union also points to Blue Cross's defense counsel's testimony that the discovery that Blue Cross had actually been underpaying Omega did not make Omega's legal theories stronger but rather, dealt "a massive blow to the credibility of a significant portion of our defense."[280]  According to Illinois Union, this testimony that a "significant portion" of Blue Cross's defense related to underpayments calls into question the veracity of the settlement allocation.[281]

Based on the foregoing, the Court finds that both parties have pointed to conflicting facts in the record as to whether the underlying claim is covered by the Policy. As noted *supra,* interpretation of insurance contracts generally involve questions of law. Here, however, the parties present conflicting evidence as to the underlying *facts* of the settlement.

The Court notes that the terms of the underlying settlement are confidential and that neither party submitted the settlement document into the record. While the record indicates that the underlying settlement allocated approximately 10% of the total settlement to damages for benefits owed to Omega on behalf of Blue Cross members and approximately 90% of the total settlement to damages stemming from the tort claims alleged in Omega's petition, Illinois Union presents sufficient evidence to raise a genuine dispute of material fact as to whether the underlying claims involved obligations under a contract such that they would be excluded from coverage under the Policy.[282]

---

[279] Rec. Doc. 172 at 6 (citing Rec. Doc. 172-5 at 19, 23).

[280] *Id.* (citing Rec. Doc. 172-5 at 9).

[281] *Id.*

[282] *See* Rec. Doc. 118-26 at 326–27. *See also* Rec. Doc. 116-12 at 2.

Likewise, the Court finds that Blue Cross has pointed to sufficient facts in the record to raise a genuine dispute of material fact as to whether approximately 90% of the damages in the underlying settlement, allocated to damages stemming from Omega's tort claims, are covered under the Policy's definition of loss and not excluded under the carve-outs or other exclusions in the Policy. However, Blue Cross is not entitled to summary judgment on its coverage and breach of contract claims, because Illinois Union has also pointed to sufficient facts in the record to raise a genuine dispute of material fact as to the nature of the claims settled in the underlying action.

As the Fifth Circuit, applying Louisiana law, has held, "an insurer should have to reimburse the insured only to the extent that the settlement compromised claims that were covered by the policy."[283] Here, Illinois Union has pointed to facts in the record that suggest that the settlement was intended to compromise claims for breach of contract that would be excluded from coverage under the terms of the Policy. On the other hand, Blue Cross has pointed to facts in the record that suggest that the settlement compromised claims that sounded in both contract and tort such that part of the settlement would be covered by the Policy. Because both parties have pointed to facts in the record that raise a genuine dispute of material fact as to the nature of the claims that were compromised in the underlying action, Blue Cross is not entitled to summary judgment on its coverage and breach of contract claims, and Illinois Union is likewise not entitled to summary judgment on its coverage claim.

The Court notes that Illinois Union argues that three of the claims in the underlying action

---

[283] *Fed. Ins. Co. v. New Hampshire Ins. Co.*, 439 F. App'x 287, 290–91 (5th Cir. 2011) (citing Allan D. Windt, 2 Insurance Claims and Disputes § 5:31 (5th ed. 2009) (internal quotations omitted). *See also Gulf Fleet Marine Ops., Inc. v. Wartsila Power, Inc.*, 797 F.2d 257, 261 (5th Cir. 1986) (applying Louisiana law and finding that the insurer was only obligated to pay for the portion of the settlement that compromised claims that were covered by the policy).

are uninsurable as a matter of law.[284] First, Illinois Union argues that Omega's claim for fraud in the underlying action is not covered by the Policy, because fraud is uninsurable under Louisiana law.[285] Next, Illinois Union contends that Omega's claims for detrimental reliance and unjust enrichment do not qualify as loss under the Policy, because these causes of action are based on equitable principles and are generally considered to be quasi-contractual and are therefore excluded under the Policy.[286]

As to the fraud claim in the underlying action, the Court notes that in its reply brief in further support of its motion for summary judgment, Illinois Union notes that the fraud exclusion in the Policy actually requires "some in fact determination of fraud, either through an admission or a final adjudication 'in a proceeding constituting the Claim or in a proceeding separate from or collateral to any proceeding constituting the Claim.'"[287] Illinois Union argues that fraud can therefore be established and excluded in this proceeding.[288] Illinois Union relies on *Bonin v. Westport Insurance Corporation* for the proposition that the Court can make a final adjudication of fraud in this case and apply the exclusion for fraudulent conduct in the Policy at this time.[289] However, in *Bonin*, the plaintiffs acknowledged that fraudulent conduct had occurred and the court accordingly found that it could make a judicial determination that the plaintiffs' behavior

---

[284] Rec. Doc. 118-1 at 11.

[285] *Id.* at 10.

[286] *Id.*

[287] Rec. Doc. 172 at 9 (citing Rec. Doc. 118-5).

[288] *Id.*

[289] 930 So.2d 906, 916 (La. 2006).

constituted a fraudulent act under the policy and was excluded from coverage.[290] In the instant case, by contrast, Blue Cross has not acknowledged liability for any of the tort claims in the underlying action,[291] and Illinois Union has not pointed to facts in the record to demonstrate that Blue Cross committed fraud such that the fraud exclusion in the Policy excludes coverage for any of the settled claims in the underlying action. Accordingly, Illinois Union has not shown that there is no dispute of material fact such that the fraud exclusion applies at this time to Blue Cross's damages in the underlying action.

As to Illinois Union's arguments regarding the claim of detrimental reliance in the underlying action, the Court notes that a detrimental reliance theory may sound in contract.[292] However, as the Louisiana Supreme Court has recognized, "[i]t is the nature of the duty breached that should determine whether the action is in tort or contract."[293] Thus, even if a claim is characterized as a claim for detrimental reliance, such a claim may in fact sound in tort depending on the nature of the duty breached.[294] Here, as noted *supra*, Blue Cross has pointed to evidence in

---

[290] *Id.*

[291] *See* Rec. Doc. 118-26 at 330 (Blue Cross's coverage attorney testifying that Blue Cross did not acknowledge liability for any of the tort claims in the underlying action).

[292] *See Stokes v. Georgia-Pac. Corp.*, 894 F.2d 764, 770 (5th Cir. 1990) (citing La. Civ. Code art. 1967) (interpreting Louisiana law and finding that a detrimental reliance claim sounded in contract and was therefore subject to the prescription period for contracts).

[293] *Copeland v. Wassserstein, Perella & Co.*, 276 F.3d 472, 479 (5th Cir. 2002) (citing *Roger v. Dufrene*, 613 So.2d 947, 948 (La. 1993)) (interpreting Louisiana law and finding that a detrimental reliance claim based on the failure of a financial adviser to observe a standard of care sounded in tort).

[294] *Id. See also Roger*, 613 So.2d at 949 ("The nature of certain professions is such that the fact of employment does not imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession. The duty imposed upon the insurance agent as well as [the lawyer, doctor, and accountant] upon whose advice the client or patient depends is that of 'reasonable diligence' a breach of which duty results in an action in negligence."); § 19:8.Detrimental reliance, 18 La. Civ. L. Treatise, Civil Jury Instructions § 19:8 (3d ed.) ("The basis of detrimental reliance is not the intent to be bound, since detrimental reliance is not really contractual in nature. It is based on the idea that a person should not harm another person by making promises that he does not keep.").

the record that Omega's causes of action in the underlying action are related to Blue Cross's breach of its duty to adhere to an industry standard of care by, for example, presenting inaccurate information on its web portal.[295] On the other hand, as noted *supra*, Illinois Union has presented evidence that the settled damages actually flow from Blue Cross's breach of a contractual duty.[296] Because Illinois Union has not shown that there is no dispute of material fact such that the settled damages sound in contract rather than tort, it is not entitled to summary judgment on this basis.

Finally, the Court notes that a claim for unjust enrichment under Louisiana law is characterized as "quasi-contractual."[297] However, the Court notes that Illinois Union does not point to any authority for its assertion that an action characterized as "quasi-contractual" would be excluded under the Policy's carve-out for "fees, amounts, limits, benefits, obligations, or coverages owed under any contract with any party . . . ."[298] Even if damages stemming from unjust enrichment were excluded under the Policy's carve-out, Illinois Union has not shown that there is no dispute of material fact as to which portion of the settlement would be excluded. Finally, the Court notes that Illinois Union argues that detrimental reliance and unjust enrichment are "based on equitable principles."[299] However, a party may seek monetary damages for a claim of detrimental reliance or unjust enrichment,[300] and Illinois Union has not shown that a claim that is

---

[295] *See, e.g.*, Rec. Doc. 1-2 at 10.

[296] *See, e.g.,* Rec. Doc. 172 at 6.

[297] *See Canal/Claiborne, Ltd. v. Stonehedge Dev., LLC*, 2014-0664 (La. 12/9/14), 156 So. 3d 627, 633–34. (holding that it is "well-settled in our jurisprudence" that unjust enrichment is a quasi-contract claim).

[298] Rec. Doc. 118-5 at 10.

[299] Rec. Doc. 118-1 at 10.

[300] *See Magic Moments Pizza, Inc. v. Louisiana Rest. Ass'n,* 02-160 (La. App. 5 Cir. 5/29/02), 819 So. 2d 1146, 1149 (discussing what a party must prove to recover damages for detrimental reliance); *Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95), 648 So. 2d 888, 897 (remanding case for determination of whether plaintiff

merely based on equitable principles is excluded under the Policy's carve-out for "non-monetary relief or equitable relief or redress in any form . . . ."[301]

Based on the foregoing, the Court concludes that there are genuine disputes of material fact precluding summary judgment regarding whether the Policy covers the settlement damages for which Blue Cross seeks coverage such that neither party is entitled to summary judgment.

### 2.    The Policy's Consent to Settle Clause

In its motion for summary judgment, Illinois Union argues that even if the settled claims are covered under the Policy, Blue Cross lacked the required prior written consent to settle the underlying action.[302] Illinois Union contends that the consent to settle clause in the Policy is a condition precedent to coverage, because the Policy contains clear language that coverage is precluded if the condition goes unmet.[303] Illinois Union asserts that Blue Cross failed to provide it with necessary information supporting coverage of the damages in the underlying suit and that Illinois Union expressly denied Blue Cross's request to waive the consent to settle condition.[304] Thus, Illinois Union contends that because it never gave written consent to the settlement of the underlying action, summary judgment is proper on its request for declaratory relief that it is not required to cover Blue Cross's losses in the underlying action.

Blue Cross argues that Illinois Union may not raise lack of consent as a coverage defense,

---

was entitled to damages for unjust enrichment).

[301] Rec. Doc. 118-5 at 10.

[302] Rec. Doc. 118-1 at 6.

[303] *Id.*

[304] *Id.* at 7.

because Illinois Union unreasonably withheld consent and thus left Blue Cross free to settle the underlying action.[305] Blue Cross further avers that Illinois Union verbally consented to the settlement by agreeing to pay a portion of the settlement at the mediation.[306] Blue Cross contends that where an insurer wrongfully denies coverage, the insured reasonably believes it will suffer an adverse outcome at trial, and there is no evidence that the insured improperly entered into the settlement, the insured is entitled to settle the claim.[307] According to Blue Cross, Illinois Union repeatedly informed Blue Cross that it believed that the damages sought by Omega in the underlying action were excluded from coverage.[308] Thus, Blue Cross argues, it was relieved from the need to obtain Illinois Union's consent before settling.[309]

Under Louisiana law, consent to settle clauses in insurance policies have been found to be consistent with public policy.[310] As the Fifth Circuit has recognized, Louisiana jurisprudence on consent to settle clauses suggests "that whether a court will excuse a breach of a consent-to-settle clause depends on the circumstances of the situation."[311] "Louisiana courts have declined to enforce consent to settle . . . clauses only in certain limited situations."[312] One such situation is

---

[305] Rec. Doc. 116-1 at 13.

[306] *Id.*

[307] *Id.* at 14 (citing *Singleton v. United Tugs, Inc.*, 710 So.2d 347, 352 (La. App. 4 Cir. 3/18/98)).

[308] *Id.* at 15.

[309] *Id.*

[310] *See Rosenthal v. Sec. Ins. Grp. of New Haven*, 205 So.2d 816, 818 (La. App. 1968).

[311] *Danrik Const., Inc. v. Am. Cas. Co. of Reading Penn.*, 314 F. App'x 720, 723–24 (5th Cir. 2009) (*per curiam*).

[312] *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 307 (5th Cir. 2012) (*per curiam*).

where the insurer "wrongfully refuses to defend its insured."[313] Another such situation is where the insurer "denies coverage where there is coverage, or unjustifiably delays settlement."[314]

Here, the Policy itself contains the following language in the "Conditions" section of the Policy: "No Insured may settle or offer to settle any Claim, incur Defense Expenses, otherwise assume any contractual obligation or admit liability with respect to any Claim without the Insurer's prior written consent, which consent shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, Defense Expenses, assumed obligation or admission to which it has not consented."[315]

The parties do not dispute that the Policy contains a consent to settle clause requiring Blue Cross to obtain Illinois Union's written consent before settling a claim.[316] Moreover, the parties do not dispute that Blue Cross did not obtain Illinois Union's written consent before settling the underlying action with Omega.[317] However, both parties recognize that the Policy requires that consent "not be unreasonably withheld."[318] Here, both parties point to conflicting evidence regarding whether Illinois Union's unreasonably withheld its written consent.

In particular, Blue Cross points to evidence in the record that Omega was seeking damages

---

[313] *Id.* (citing *Arceneaux v. Amstar Corp.*, 66 So.3d 438, 452 (La. 2011); *Thomas W. Hooley & Sons v. Zurich Gen. Acc. & Liab. Ins. Co.*, 103 So.2d 449,452–53 (1958)).

[314] *Id.* (citing *Emile M. Babst Co., Inc. v. Nichols Constr. Corp.*, 488 So.2d 699, 703 (La. App. 1 Cir. 1986); *Fed. Ins. Co. v. N.H. Ins. Co.*, No. 03-385, 2010 WL 28568, at *4–5 (M.D. La. Jan. 4, 2010)).

[315] Rec. Doc. 1-3.

[316] *See* Rec. Doc. 116-1 at 13 (Blue Cross asserting that under the terms of the Policy, it may settle a claim with Illinois Union's written consent).

[317] *Id.* at 12–13 (Blue Cross asserting that it requested but did not receive Illinois Union's written consent before settling, because Illinois Union declined to give its written consent).

[318] Rec. Doc. 1-3 at 28.

in the range of $45 million to $108 million and that Blue Cross communicated this range to Illinois Union.[319] Blue Cross also points to the fact that the mediation at which it reached a settlement with Omega took place on the eve of a quickly approaching trial date.[320] Blue Cross notes that the settlement ultimately allocated a portion of the damages to Omega's tort claims in the underlying action and argues that a portion of the claims in the underlying action were therefore covered under the Policy.[321] Blue Cross also asserts that Illinois Union effectively denied coverage for the settlement and points to the deposition testimony of an Illinois Union's claims handler that Illinois Union's position was that there was no coverage for any judgment or settlement in the underlying action and that this position was communicated to Blue Cross.[322]

Finally, Blue Cross argues that even though Illinois Union did not provide its written consent to the settlement, Illinois Union verbally consented to the settlement in the underlying action by agreeing to pay a portion of the settlement.[323] Blue Cross points to the deposition testimony of Illinois Union's representative at the mediation, Pizzonia, in which he stated that he often gives verbal approval of settlements at the time of mediation and that verbal approval is sufficient to comply with the Policy's consent to settle clause.[324] Blue Cross also points to Pizzonia's testimony that he offered on behalf of Illinois Union to contribute $500,000 to the settlement, an amount that Pizzonia testified was consistent with Blue Cross's defense counsel's

---

[319] Rec. Doc. 116-1 at 12 (citing Rec. Doc. 1, Rec. Doc. 116-8).

[320] *Id.*

[321] Rec. Doc. 158-2 at 2.

[322] Rec. Doc. 146 at 8 (citing Rec. Doc. 146-7 at 3, 7).

[323] Rec. Doc. 116-1 at 13.

[324] Rec. Doc. 116-7 at 4.

budget for a trial.[325]

By contrast, Illinois Union asserts that its refusal to give written consent was reasonable and points to a communication it received from Blue Cross prior to the mediation in which Blue Cross's in-house counsel advised Illinois Union that a trial with Omega would be "very winnable" and that the damages in the case were "big—but imaginary."[326] Illinois Union argues that time was not of the essence in this case, as trial was more than a week after the mediation.[327] Illinois Union further argues that it did not deny coverage for the settlement but rather, reserved its rights under the Policy.[328] Specifically, Illinois Union points to the deposition testimony of its employee stating that Illinois Union reserved its rights under the Policy, pending further investigation.[329] Illinois Union points to Pizzonia's testimony that he informed Blue Cross's counsel that he did not have the authority to waive the consent to settle clause in the Policy,[330] as well as Illinois Union's communication to Blue Cross's counsel after the mediation stating that it would not waive the consent to settle clause.[331]

Accordingly, based on the foregoing, both parties have pointed to facts in the record to raise a disputed issue of material fact as to whether Illinois Union's refusal to give written consent to settlement was reasonable under the circumstances. Moreover, as noted *supra*, Louisiana

---

[325] *Id.* at 14.

[326] Rec. Doc. 147 at 13–14 (citing Rec. Doc. 118-25).

[327] *Id.* at 14.

[328] *Id.* at 15 (citing Rec. Doc. 147-4 at 3).

[329] Rec. Doc. 147-4 at 3.

[330] *Id.* at 15.

[331] Rec. Doc. 116-10 at 2.

jurisprudence suggests that a failure to conform to a consent to settle clause may be excused where the insurer "denies coverage where there is coverage, or unjustifiably delays settlement."[332] Here, there also exists a factual dispute as to whether Illinois Union effectively denied coverage of the damages in the underlying suit.

The Court notes that in its sur-reply, Illinois Union argues that it is undisputed that: (1) the Policy required that "no insured may settle or offer to settle any Claim . . . without the insurer's prior written consent, which consent shall not be unreasonably withheld;" and (2) that Blue Cross made offers to settle in the underlying action without obtaining Illinois Union's consent, both prior to and during the mediation, which ultimately resulted in the settlement at issue.[333] Thus, Illinois Union contends that Blue Cross violated the Policy in making offers to settle prior to the mediation and that coverage is therefore precluded for the settlement that was arrived at during the mediation.[334]

However, the Court finds this new argument, brought for the first time in a sur-reply, insufficient to show that summary judgment in Illinois Union's favor is warranted. First, Illinois Union has not shown that the Policy precludes coverage of a settlement if *any* offer to settle was made prior to the ultimate settlement regardless of whether or not that offer was accepted. Here, the Policy states that the insurer "shall not be liable for any settlement . . . to which it has not

---

[332] *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 307 (5th Cir. 2012) (*per curiam*) (citing *Emile M. Babst Co., Inc. v. Nichols Constr. Corp.*, 488 So.2d 699, 703 (La. App. 1 Cir. 1986); *Fed. Ins. Co. v. N.H. Ins. Co.*, No. 03-385, 2010 WL 28568, at *4–5 (M.D. La. Jan. 4, 2010)).

[333] Rec. Doc. 223-3 at 1.

[334] *Id.*

consented."[335] The Policy does not state that the insurer will not be liable for *any* settlement if any offer to settle had been made previously without Illinois Union's written consent. As noted *supra*, under Louisiana law, the Court may not interpret an insurance contract "in an unreasonable or strained manner . . . to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[336] Illinois Union's reading of the Policy would require the Court to read additional language into the Policy and would result in an insurer being free to unreasonably withhold consent to a request for settlement if an insured had ever made a separate offer to settle.

Second, the Court notes that Illinois Union also claims that Blue Cross did not inform Illinois Union or seek Illinois Union's written consent for the settlement offers made by Blue Cross during the mediation.[337] As this argument was raised for the first time on sur-reply, Blue Cross has not had an opportunity to respond to this argument. However, in Illinois Union's own motion for summary judgment, it states that Blue Cross "informed Illinois Union that Omega wanted to mediate."[338] Illinois Union also represented that Blue Cross again "advised two days later" that mediation would occur on April 23, 2016.[339] Moreover, Illinois Union stated that Blue Cross's coverage counsel "demanded Illinois Union attend the mediation with final authority up to Policy limits, noting that Omega sought damages 'in the range of $45,000,000 to $108,000,000' and [Blue

---

[335] Rec. Doc. 1-2 at 27.

[336] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 208 (internal citation omitted).

[337] Rec. Doc. 223-3 at 2.

[338] Rec. Doc. 118-1 at 4.

[339] *Id.*

Cross] 'believed the case can be settled for an amount within the remaining limits' of the Policy."[340] Additionally, Illinois Union confirms in its motion that it attended the mediation "with authority."[341] Although Illinois Union contends that communication between Blue Cross and Illinois Union throughout the mediation day was lacking, Illinois Union states that Blue Cross "advised Illinois Union that *its offer* was in excess of the eroding Policy limits . . . and advised a settlement *could be achieved*."[342] Accordingly, the Court finds that Illinois Union has not shown that there is no dispute of material fact that: (1) it had no knowledge of the ultimate offer to settle that resulted in the underlying settlement; and (2) that there was no written consent to the offer to settle despite Illinois Union's admitted involvement in the mediation and surrounding communications with Blue Cross. Moreover, as the Court noted *supra*, the Policy requires that written consent to both settlements and offers to settle "shall not be unreasonably withheld."[343] Here, in light of the disputed factual issues regarding Illinois Union's knowledge of the final offer and whether it gave written consent to make the offer, Illinois Union has also not shown that there is no disputed issue of material fact as to whether that consent was unreasonably withheld.

Because disputes of material fact exist regarding the reasonableness of Illinois Union's denial of written consent and whether Illinois Union denied coverage where there is coverage, neither party is entitled to summary judgment based on the Policy's consent to settle clause.

---

[340] *Id.*

[341] *Id.*

[342] *Id.* at 4–5.

[343] Rec. Doc. 118-5 at 27.

### 3. The Policy's Cooperation Clause

In its motion for summary judgment, Illinois Union argues that coverage of the underlying settlement is also barred, because Blue Cross failed to comply with the cooperation clause in the Policy, which it represents requires the insured to provide Illinois Union "with all information, assistance, and cooperation" that it reasonably requests.[344] Illinois Union contends that it made a diligent effort to obtain the information it needed from Blue Cross but that Blue Cross failed to cooperate.[345] As a result, Illinois Union avers, it suffered prejudice when it lacked the information necessary to make an informed decision regarding a settlement before Blue Cross settled unilaterally.[346] Thus, Illinois Union argues that coverage is barred.[347]

In opposition, Blue Cross contends that it cooperated in accordance with the Policy's cooperation clause and that even if the Court does find a breach of the cooperation clause, Illinois Union has failed to show that the breach was material and prejudicial.[348] Moreover, Blue Cross argues that its defense counsel in the underlying action did not create any damages or liability analyses.[349] Thus, Blue Cross argues, it did not fail to cooperate by not providing such analyses to Illinois Union.[350] Even if such analyses did exist, Blue Cross argues, Illinois Union would not be

---

[344] Rec. Doc. 118-1 at 7–8.

[345] *Id.* at 8.

[346] *Id.*

[347] *Id.*

[348] Rec. Doc. 146 at 8–9.

[349] *Id.*

[350] *Id.*

entitled to them because they would constitute privileged information.[351]  Blue Cross also contends that Illinois Union failed to conduct an independent investigation of the allegations asserted against Blue Cross even though the filings in the underlying action were publically available.[352]

"In an insurance contract, the insured's duty to provide information ordinarily arises only under the express policy obligations."[353]  Under Louisiana law, cooperation clauses in insurance contracts "fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh."[354]  Louisiana law recognizes that the insured's failure to comply with a cooperation clause "may constitute a breach of the contract and a defense to suit on the policy."[355]  At the same time, the dismissal of an insured's suit on the basis of a breach of a cooperation clause is "a draconian remedy which [courts] do not ordinarily favor."[356]  For an insurer to obtain such a dismissal, it must "show a diligent effort to obtain [the requested] information."[357]  Additionally, the insured must show that the insured's breach was "both material and prejudicial to [it]."[358]

---

[351] *Id.* at 12.

[352] *Id.* at 13.

[353] *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cagle*, 68 F.3d 905, 912 (5th Cir. 1995).

[354] *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 F. App'x 162, 165 (5th Cir. 2012) (*per curiam*) (internal citation and quotation marks omitted).

[355] *Id. See also Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 688 (La. Ct. App. 1992).

[356] *Lee*, 607 So.2d at 685.

[357] *Nat'l Union*, 68 F.3d at 912 (internal citation omitted).

[358] *Williams v. Lowe*, 831 So.2d 334, 336 (La. App. 2002). *See also Freyou v. Marquette Cas. Co.*, 149 So. 2d 697, 699–700 (La. Ct. App. 1963), *writ refused*, 150 So.2d 771 (La. 1963) ("From our view of the jurisprudence, we have reached two conclusion: that each case rests on its own facts and circumstances, and that a breach of the cooperation clause must be both material and prejudicial." (internal citation omitted); *Hamilton*, 477 F. App'x at 165 ("The defendant must also show that it has been prejudiced by the failure of the plaintiffs [to cooperate].") (internal citations omitted); *Johnson v. Geovera Spec. Ins. Co.*, 657 F. App'x 301, 303 (5th Cir. 2016) (*per curiam*) (applying Louisiana law and finding that the cooperation clauses eliminate the insurer's coverage duties "if, with prejudicial

Here, Illinois Union points to correspondence between Blue Cross's counsel and Illinois Union's claims handler indicating that Blue Cross did not provide information regarding the potential risk of damages in the underlying action until only weeks before the mediation.[359] Illinois Union also points to correspondence between Blue Cross's counsel and Illinois Union's claims handler in which the claims handler indicates that Blue Cross failed to respond to requests for information regarding the Omega lawsuit on nine occasions.[360]

In response, Blue Cross points to evidence that it provided regular status updates consistent with the parties' custom, including 16 updates it provided to Illinois Union regarding the underlying action.[361] Blue Cross also points to the deposition testimony of Illinois Union's claims handler for the underlying action, who acknowledged that she also had teleconferences with Blue Cross to discuss the status of the Omega claim and that the teleconferences were helpful.[362]

The Court notes that Illinois Union argues that there were gaps in Blue Cross's updates and that Blue Cross could have provided Illinois Union with more helpful information over the course of the litigation.[363] However, Illinois Union has not demonstrated that there is no dispute of material fact such that the gaps or quality of the information provided establish that Blue Cross

---

effect, [the insured] fails to take certain actions after the event triggering the policy coverage occurs"); *Kovesdi v. Allstate Indem. Co.*, No. 10-697, 2010 WL 3835893, at *6 (E.D. La. Sept. 24, 2010) (Fallon, J.) ("[U]nder Louisiana law, an insurer must show prejudice in order to avail itself of the defense based on an insured's failure to cooperate."); 2 *La. Prac. Pers. Inj.* § 16:17 ("To relieve a liability insurer of the obligation under the policy, a breach of the cooperation clause must be material and prejudicial.") (internal citations omitted).

[359] Rec. Doc. 118-2 at 5–6 (citing Rec. Doc. 25 at 4) (correspondence between Illinois Union claims handler and Blue Cross counsel with attached memorandum on the Omega suit dated March 8, 2016).

[360] Rec. Doc. 118-23 at 1–2.

[361] Rec. Doc. 146 at 9–10 (citing Rec. Docs. 146-16–146-25).

[362] Rec. Doc. 146-7 at 5–6.

[363] Rec. Doc. 172 at 3.

breached the cooperation clause in the Policy. The Court finds that Blue Cross has pointed to evidence in the record sufficient to raise a dispute of material fact as to whether it complied with the cooperation clause in the Policy. Accordingly, to the extent Illinois Union asserts that summary judgment in its favor is proper on the basis of Blue Cross's failure to comply with the cooperation clause, the Court finds that genuine disputes of material fact exist precluding summary judgment on this basis.

### 4.    Defense Costs in the Underlying Action

In its motion for summary judgment, Illinois Union argues that it is entitled to summary judgment on Blue Cross's counterclaim that Illinois Union failed to pay certain defense costs in the underlying action.[364] According to Illinois Union, there is no evidence that it failed to reimburse Blue Cross for any of its defense costs.[365]

Illinois Union has submitted evidence, including correspondence between Blue Cross and Illinois Union representatives,[366] correspondence between counsel for Blue Cross and Illinois Union,[367] and Blue Cross's report of defense costs, that indicates that Illinois Union paid $1,157,006.79 in defense costs to Blue Cross after accounting for the $500,000 self-insured retention ("SIR") and determining that $1,336.50 of Blue Cross's submitted defense costs were attributable to tasks other than defense of the underlying action and therefore did not qualify as

---

[364] Rec. Doc. 118-1 at 19.

[365] *Id.* (citing Rec. Doc. 22).

[366] Rec. Doc. 118-21 at 1; Rec. Doc. 118-22 at 1–2.

[367] Rec. Doc. 118-37; Rec. Doc. 118-38.

defense costs in the underlying action.[368]

In its Counterclaim, Blue Cross asserts that Illinois Union has a duty to reimburse Blue Cross for costs incurred in connection with the underlying action, including defense expenses.[369] However, in Blue Cross's statement of material facts attached to its opposition to Illinois Union's motion for summary judgment, Blue Cross admits that the Policy affords Blue Cross "errors and omissions liability coverage once [Blue Cross] reaches a $500,000 self-insured retention ('SIR')" and that "Illinois Union agreed to reimburse [Blue Cross's] defense costs in excess of the SIR."[370] Accordingly, the Court finds that there is no dispute of material fact as to whether Illinois Union agreed to reimburse Blue Cross's defense costs in the underlying action in excess of the SIR. Thus, Illinois Union's motion is granted to the extent that it requests summary judgment on Blue Cross's request for defense costs in the underlying action in excess of the SIR.[371]

### 5. Attorneys' Fees in the Instant Action

Illinois Union also contends that it is entitled to summary judgment on Blue Cross's request for attorneys' fees associated with the instant action, because attorneys' fees are only recoverable when authorized by statute or contract, neither of which applies here.[372] In response, Blue Cross argues that it has a right to recover attorneys' fees in this action, because Louisiana courts recognize an insured's entitlement to attorneys' fees where the insurer has been guilty of bad faith

---

[368] Rec. Doc. 118-21 at 2.

[369] Rec. Doc. 11 at 19.

[370] Rec. Doc. 146-1 at 2.

[371] Rec. Doc. 11 at 21.

[372] *Id.*

towards its insured.[373]

The Court notes as a preliminary matter that under Louisiana law, attorneys' fees are recoverable only when authorized by statute or contract.[374] Neither party asserts that the Policy in this case allows for the recovery of attorneys' fees. However, Blue Cross argues that it is entitled to attorneys' fees for Illinois Union's bad faith conduct.[375] The Court notes that Blue Cross brings a counterclaim against Illinois Union for bad faith under Louisiana Revised Statute § 22:1973.[376] Section 22:1973 states that "the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."[377] However, as the Louisiana Supreme Court has recognized, Section 22:1973 does not allow for recovery of attorneys' fees.[378] The Louisiana appellate case cited by Blue Cross for the proposition that attorneys' fees are recoverable under Section 22:1973 was later reviewed by the Louisiana Supreme Court and the judgment in the case was amended to "delete the $10,000 attorneys [sic] fees."[379] Accordingly, Illinois Union is entitled to summary judgment in its favor denying Blue Cross's request for attorneys' fees in the instant action.[380]

---

[373] Rec. Doc. 146 at 20.

[374] *Sher v. Lafayette Ins. Co.*, 2007-2441 (La. 4/8/08), 988 So. 2d 186, 201, *on reh'g in part* (July 7, 2008) ("Louisiana courts have long held that attorney's fees are not allowed except where authorized by statute or contract.").

[375] Rec. Doc. 146 at 20.

[376] *Id.* at 23.

[377] La. Rev. Stat. § 22:1973(C).

[378] *Katie Realty, Ltd. v. La. Citizens Prop. Ins. Corp.*, 2012-0588, (La. 10/16/12), 100 So.3d 324, 330 (holding that a violation of §22:1973 may "subject the insurer to penalties 'in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.' Attorney fees, though, are not recoverable.").

[379] *Batson v. S. La. Med. Ctr.*, 734 So.2d 649 (La. 1999).

[380] *See* Rec. Doc. 11 at 21, 24.

# IV. Conclusion

Based on the foregoing, the Court finds that there are genuine disputes of material fact precluding summary judgment for either party on: (1) Count I of Illinois Union's Complaint, in which Illinois Union seeks a declaratory judgment that Illinois Union is not required to indemnify Blue Cross for the underlying settlement due to the fact that Blue Cross did not obtain Illinois Union's written consent; (2) Count II of Illinois Union's Complaint, in which Illinois Union seeks a declaratory judgment that Illinois Union has no obligation to indemnify Blue Cross due to the fact that the settlement encompasses damages that are not covered under the Policy; (3) Count I of Blue Cross's counterclaim for declaratory judgment that Illinois Union must indemnify Blue Cross for the settlement in the underlying action; and (4) Count II of Blue Cross's counterclaim for breach of contract as a result of Illinois Union's failure to indemnify Blue Cross for the settlement in the underlying action.

The Court concludes that there are genuine disputes of material fact precluding summary judgment regarding whether the Policy covers the settlement damages for which Blue Cross seeks coverage. Because disputes of material fact exist regarding the reasonableness of Illinois Union's denial of written consent, neither party is entitled to summary judgment based on the Policy's consent to settle clause. To the extent Illinois Union asserts that summary judgment is proper on the basis of Blue Cross's failure to comply with the cooperation clause, the Court finds that genuine disputes of material fact exist precluding summary judgment on this basis.

The Court finds that there is no dispute of material fact as to whether Illinois Union agreed to reimburse Blue Cross's defense costs in the underlying action in excess of the SIR. Thus, the Court finds that Illinois Union is entitled to summary judgment in its favor to the extent that it

requests summary judgment on Blue Cross's request for defense costs associated with the underlying action in excess of the SIR. Finally, because attorney's fees are not recoverable under Louisiana Revised Statute § 22:1973, the Court finds that Illinois Union is entitled to summary judgment in its favor denying Blue Cross's request for attorneys' fees in the instant action.

Accordingly,

**IT IS HEREBY ORDERED** that Blue Cross's "Motion for Summary Judgment on Coverage Obligations"[381] is **DENIED.**

**IT IS FURTHER ORDERED** that Illinois Union's "Motion for Summary Judgment on Coverage"[382] is **GRANTED IN PART** and **DENIED IN PART.** Illinois Union's motion is **DENIED IN PART** to the extent that it seeks summary judgment in its favor on: (1) Count I of Illinois Union's Complaint, in which Illinois Union seeks a declaratory judgment that Illinois Union is not required to indemnify Blue Cross for the underlying settlement due to the fact that Blue Cross did not obtain Illinois Union's written consent; (2) Count II of Illinois Union's Complaint, in which Illinois Union seeks a declaratory judgment that Illinois Union has no obligation to indemnify Blue Cross due to the fact that the settlement encompasses damages that are not covered under the Policy; (3) Count I of Blue Cross's counterclaim for declaratory judgment that Illinois Union must indemnify Blue Cross for the settlement in the underlying action; and (4) Count II of Blue Cross's counterclaim for breach of contract as a result of Illinois Union's failure to indemnify Blue Cross for the settlement in the underlying action. The motion is **GRANTED IN PART** to the extent that it requests summary judgment in Illinois Union's favor

---

[381] Rec. Doc. 116.

[382] Rec. Doc. 118.

on the issue of whether it reimbursed Blue Cross's defense costs associated with the underlying action in excess of the SIR. The motion is further **GRANTED IN PART** to the extent that it requests summary judgment in Illinois Union's favor denying Blue Cross's request for attorneys' fees in the instant action.

**NEW ORLEANS, LOUISIANA**, this  12th  day of June, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**